**U.S. DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KENNETH N. THOMPSON, SR. *et al.*,      )
                                        )
                    Plaintiffs,         )
                                        )
        v.                              )
                                        )        No. 12 C 5020
VILLAGE OF MONEE, *et al.*,             )
                                        )
                    Defendants.         )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On December 17, 2012, *pro se* Plaintiffs Kenneth N. Thompson, Sr. and Keenan T. Thompson (collectively, the "Plaintiffs") filed a sixty-six page, twenty-four count Second Amended Complaint against the Village of Monee, the Village of Monee Board of Trustees, Trustee Popp, Trustee Farquhar, Trustee Stockon, Chief John Cipkar, Russel Caruso, Sergeant Anthony Lazzaroni, Officer Michael Drumm, Officer Chad Blake, Officer Crescenti, Officer Fowler, Officer Cash, Officer Jones, Teresa Catey, Stanley Catey, Martin D. Bachand, and Phyllis M. Bachand, (collectively, the "Defendants"). (R. 53, SAC.) Defendants filed three motions to dismiss the Second Amended Complaint pursuant to Federal Rule ("Rule") of Civil Procedure 12(b)(6). Specifically, Martin and Phyllis Bachand filed a motion to dismiss on January 8, 2013 (R. 64, Bachands' MTD); Teresa and Stanley Catey filed a motion to dismiss on January 11, 2013 (R. 66, Cateys' MTD); and the Village of Monee, the Village of Monee Board of Trustees, Trustee Popp, Trustee Farquhar, Trustee Stockon, Chief John Cipkar, Russel Caruso, Sergeant Anthony Lazzaroni, Officer Michael Drumm, Officer Chad Blake, and Officer Crescenti (collectively the "Monee Defendants") filed a motion to dismiss and supporting

memorandum on January 11, 2013 (R. 69, Monee MTD).  Because the issues presented by each motion to dismiss overlap, the Court addresses all three pending motions in this opinion.

**BACKGROUND**

*Pro se* Plaintiffs Kenneth N. Thompson, Sr. ("Kenneth") and Keenan T. Thompson ("Keenan") allege the following facts, which the Court deems true for the purposes of this motion.

Plaintiffs are an African-American father and son who reside on a 3-acre estate in Monee, Illinois.  (SAC ¶¶ 4-5, 14, 49.)  According to Plaintiffs, Defendants have conspired together in a discriminatory scheme – spanning from 2007 to 2011 – designed to force Plaintiffs to move from the community.  (SAC ¶ 43.)  This conspiracy included Chief Caruso, Chief Cipkar, the Monee Officers, and Officer Drumm (collectively, the "Officers") "continuously trespassing on Plaintiff's property" and threatening to arrest Kenneth over fifty times during that period, as well as three actual arrests of Kenneth without probable cause.  (SAC ¶¶ 20, 25-26, 55.)  According to Plaintiffs, as part of this conspiracy, the Cateys and the Bachands (collectively, the "Neighbors") made false statements to the Officers to facilitate false arrests of Kenneth.  (SAC ¶¶ 16, 21, 23.)  The Officers, Trustees, and Neighbors also made statements "with intent to deceive and mislead [the] State Prosecutor for the purposes of instituting a false arrest and incarcerat[ing] Plaintiff." (SAC ¶ 201.)

Plaintiffs refer to ten particular instances of police harassment on Kenneth's property, some of which the Neighbors provoked by their complaints to the police.  (SAC ¶¶ 13-26.)  The dates of these incidents are August 15, 2007, June 21, 2008, May 11, 2009, July 11, 2009, January 2-3, 2010, June 26, 2010, July 10, 2010, July 9, 2011, July 17, 2011, and August 27,

2011.  (*Id.*)  On each of these dates, Officers arrested, threatened arrest, or attempted to arrest

Kenneth, Keenan, or Plaintiffs' friends.  (*Id.*)

Specifically, Officers threatened to or attempted to arrest Kenneth on June 21, 2008, May

11, 2009, July 11, 2009, January 3, 2010, July 10, 2010, and July 9, 2011.  (SAC ¶¶ 14-15, 17,

19, 22, 24.)  On June 21, 2008, Kenneth was hosting a birthday party for his daughter when

Officer Drumm arrived at his home and threatened to arrest him, claiming that a Neighbor had

called complaining of noise coming from his property.  (SAC ¶ 14.)  On May 11, 2009, Kenneth

called the police because someone trespassed on his property.  (SAC ¶ 15.)  Officer Drumm

arrived on the scene and attempted to arrest Kenneth, but Kenneth went inside his home and

locked the door, preventing Officer Drumm from arresting him.  (*Id.*)  According to Plaintiffs,

they recorded this incident and gave the videotape to Chief Caruso.  (*Id.*)

On July 11, 2009, Kenneth was hosting a birthday party at his home with over seventy-

five friends and business associates present.  (SAC ¶ 17.)  Neighbors made repeated calls to the

police, saying:

    1) "Those colored folks are riding All Terrene Vehicles on our property"

    2) "Those Black people are playing loud music I want them arrested"

    3) "Those Black people are walking on my property"

    4) "Those colored folks are parking their cars on my Grass"

    5) "Those colored folks are not cutting their grass and brining down my property value"

    6) "Those Black people have their dog and toys are on my property"

(*Id.*)  Certain Officers arrived at Kenneth's home several times that day, and attempted to arrest

him.  (*Id*.)  The officers did not arrest him, though, because he locked himself in his house.  (*Id*.)  According to Plaintiffs, the Officers left, but "continued to return every hour."  (*Id.*)

On January 3, 2010, certain Officers "busted down" the front door of Kenneth's house "from the hinges," and alleged that they had a warrant for Kenneth's arrest.  (SAC ¶ 19.)  Additionally, Officer Drumm "rammed down" the bedroom door of Kenneth's thirteen-year-old daughter.  (*Id.*)  Kenneth called his attorney, and then the Officers left.  (*Id.*)

On July 10, 2010, Kenneth was hosting a business networking function at his home with over eighty-five friends and business associates.  (SAC ¶ 22.)  Neighbors made repeated calls to the police, once again complaining about the behavior of "Black people" or "colored folks" on or near their property.  (*Id.*)  Officers arrived at Kenneth's home several times that day, and attempted to arrest him.  (*Id.*)  Officers did not arrest him, though, because he locked himself in his house, and a residential security officer prevented Officers from entering Kenneth's home.  (*Id.*)

Similarly, on July 9, 2011, Officers arrived at Kenneth's home several times, while he was hosting a business networking function with over seventy-five friends and business associates.  (SAC ¶ 24.)  Officers attempted to arrest Kenneth after Neighbors made repeated calls to the Village of Monee Police, but again did not do so because he locked himself in his home.  (*Id.*)  The Officers left, but "continued to return throughout the day" and harass Kenneth's family, friends, and business associates "frequently."  (*Id.*)

Police arrested Kenneth on June 26, 2010, July 17, 2011, and August 27, 2011.  (SAC ¶¶ 20, 25-26.)  During these three arrests, the Monee Officers and Officer Drumm placed handcuffs on him "excessively tight."  (SAC ¶¶ 27, 64.)  On June 26, 2010, some Officers arrested Kenneth

and charged him with six citations:  fleeing and attempt to elude an officer; vehicle fail to yield right of way to emergency vehicle; "unsafe backing up on road way"; driving under the influence; obstruction of justice/failure to yield to peace officer; and suspended driver's license. (SAC ¶¶ 20, 102.)  During this arrest, Officer Drumm held a gun to Kenneth's head, "excessively choked" Kenneth "around his neck preventing [him] from breathing resulting in [him] becoming faint," slammed Kenneth on the ground "face [f]irst," "brutally jabbed" both knees into the Kenneth's back causing "immediate extreme pain," and, when placing Kenneth in the squad car, applied "extreme pressure" to Kenneth's head, and then "forcefully push[ed]" Kenneth to the seat "while jabbing [him] in the neck with his closed fist."  (SAC ¶¶ 62, 178, 186.)

On July 17, 2011, some of the Officers arrived at Kenneth's home and claimed that they "need[ed] to arrest" him.  (SAC ¶ 25.)  Kenneth, "tired of running in the house," told an officer "okay arrest me," and some Officers arrested him for disorderly conduct or loud noise violation. (SAC ¶¶ 25, 104.)

On August 27, 2011, Officers arrested Kenneth again, charging him with battery.  (SAC ¶¶ 26, 105.)  Prosecutors dismissed this charge on February 8, 2012.  (*Id*.)  Kenneth spent three days in Will County jail, and then posted a $1000 bond.  (SAC ¶26.)

According to Plaintiffs, Officers illegally searched a vehicle at Kenneth's home on June 26, 2010 (SAC ¶127), illegally searched his home on seven occasions (SAC ¶120), and illegally searched his person on nine occasions (SAC ¶ 113).

Officers also harassed Keenan's friends on August 15, 2007 while Keenan hosted a "trunk party in celebration of him attending the University of Illinois at Urbana Champaign."

(SAC ¶ 13.)  Officers "wrongfully arrested" two of his friends.  (*Id*.)  Additionally, on January 2, 2010, Officers threatened to arrest Keenan at his house.  (SAC ¶ 18.)  This led to much ridicule of Keenan among his college friends and "caused a lot of stress."  (*Id.*)

In total, Plaintiffs allege twenty-four counts against Defendants.  Against the Trustees, Officers, and Neighbors, Plaintiffs allege federal claims of 42 U.S.C §§ 1982, 1983 and 1985 claims for civil rights conspiracy and 42 U.S.C § 1983 claim of equal protection class of one, as well as state claims of abuse of process, willful, reckless, and wanton conduct, intentional infliction of emotional distress, false light or defamation, and common-law fraud.  (SAC at Counts I, VII, XII, XIV, XVI, XIX, XX.)  Against the Trustees and Officers, Plaintiffs additionally allege unreasonable seizure and substantive due process in violation of 42 U.S.C § 1983, as well as state claims of malicious prosecution, assault, battery, indemnification, and false imprisonment claims.  (SAC at Counts V, XIII, XV, XVII, XVIII, XXII, XXIV.)   Against the Officers, Plaintiffs additionally allege excessive force, failure to intervene, false arrest, unreasonable search of person, unreasonable search of home, unreasonable search of vehicle, and unlawful seizure in violation of 42 U.S.C § 1983.  (SAC Counts II, VI, VIII, IX, X, XI, XXIII.)  Against the Village of Monee, Plaintiffs allege two federal 42 U.S.C. § 1983 *Monell* claims and a state law claim of *respondeat superior.*  (SAC at Counts III, IV, XXI.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted."  *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012).  Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The short and plain statement under Rule 8(a)(2)

must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

Courts construe *pro se* allegations liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (citation and internal quotation marks omitted); *see also Gomez v. Randle,* 680 F.3d 859, 864 (7th Cir. 2012) (courts must construe *pro se* pleadings liberally). A plaintiffs's *pro se* status, however, does not absolve him from complying with the federal and local procedural rules. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008); *Greer v. Board of Ed. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001). As the Supreme Court instructs, "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States,* 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L. Ed.2d 21 (1993).

## ANALYSIS

As a threshold matter, the Second Amended Complaint lists both Kenneth Thompson, Sr. and Keenan T. Thompson as Plaintiffs. Paragraph four of Second Amended Complaint states that Plaintiffs will reference Kenneth Thompson as "Thompson" or "Plaintiff" and Keenan Thompson as "Keenan." (SAC ¶ 4.) The Court, therefore, interprets all singular references to "Plaintiff" in the Second Amended Complaint as referring only to Kenneth Thompson. Based on such a reading, the Second Amended Complaint does not appear to state any injury which Keenan suffered supporting any of the twenty four claims in the Second Amended Complaint. Indeed, in one of the only paragraphs referencing Keenan, Plaintiffs state that Monee Police harassed Keenan's friends during a party Keenan hosted and later wrongfully arrested two of his friends – not Keenan himself. (SAC ¶ 4.) Unlike allegations throughout the Second Amended Complaint regarding harassment which Kenneth allegedly experienced, times officers allegedly wrongfully arrested Kenneth, or events which occurred on Kenneth's property, the Second Amended Complaint does not contain any allegations indicating that Keenan was the victim of any of the wrongdoing alleged in the Second Amended Complaint. At most, Plaintiffs allege that officers threatened to arrest Keenan, which caused him to experience ridicule and stress. (SAC ¶ 18.) Plaintiffs fail, however, to specifically tie that threat of arrest to any of the claims they allege, particularly because Plaintiffs generically refer to "Plaintiff" in most paragraphs of the Second Amended Complaint, which, as noted above, the Court interprets as Kenneth not Keenan. Plaintiffs also allege in paragraph twenty that Monee Police towed Keenan's car, though in Count Twenty-Three regarding the unlawful seizure of a vehicle, Plaintiffs allege that it is Plaintiff's – a.k.a. Kenneth's – vehicle, not Keenan's. (*See, e.g,* SAC ¶¶ 216, 217.) Keenan,

therefore, may not have standing to assert any of the claims alleged in the Second Amended Complaint. Because Plaintiffs filed *pro se* and it is unclear what allegations relate to Keenan rather than Kenneth, the Court cannot resolve the standing issue at this time. Instead, the Court directs Plaintiffs to clarify in a Third Amended Complaint which Plaintiff asserts each claim and what injury each suffered in each count.

In addition, the law is clear that a motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the pleadings, and as such, the Court's "consideration of matters outside the pleadings is not generally permitted," unless the Court converts the motion into one for summary judgment pursuant to Rule 12(d). *See Mclntyre v. McCaslin*, No. 11 C 50119, 2011 WL 6102047, at *4 (N.D. Ill. Dec. 7, 2011) (citing *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). An exception to this general rule exists where the parties present records "to which the Complaint ha[s] referred" and that are "concededly authentic," and "central" to the claims presented. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661–62 (7th Cir. 2002). Another exception includes documents that are attached to the complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("Because the letter was attached to the complaint, it became a part of it for all purposes, and so the judge could consider it in deciding the motion to dismiss without having to convert the motion to one for summary judgment.") (internal citations omitted). Plaintiffs attached numerous exhibits and affidavits to their

consolidated response to Defendants' motions to dismiss.[1]  The Court did not consider these

documents, many of which the Court could not identify.

Finally, the Neighbors and the Monee Defendants argue that certain of Plaintiffs' claims

are time-barred by the applicable statute of limitations.  (R. 69, Monee MTD at 2; R. 64

Bachands' MTD at 7; R. 66, Cateys' MTD at 6-7).  A statute of limitations provides an

affirmative defense, however, and a plaintiff is not required to plead facts in the complaint to

anticipate and defeat affirmative defenses.  *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir.

2009).  Nonetheless, "when the allegations of the complaint reveal that relief is barred by the

applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."

*Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011); *U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir.

2005) (motion to dismiss appropriate where "complaint plainly reveals that an action is untimely

under the governing statute of limitations").  The Court addresses whether Plaintiffs pled

themselves out of court on a count by count basis below.  The Court notes that, while a two-year

statute of limitations applies to Plaintiffs' 42 U.S.C. § 1983 claims and generally applies to

personal injury actions in Illinois, a one-year period applies to Plaintiffs' state-law claims here.

*See* 735 ILCS 5/13–202 (two year statute of limitations for Illinois personal injury); *Williams v.

Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (one year statute of limitations for state law claims

---

[1] Plaintiffs' Second Amended Complaint also refers to numerous exhibits, but Plaintiffs failed to attach any exhibits to their Second Amended Complaint.  The exhibits attached to Plaintiffs' Amended Complaint, however, appear to align with those referenced in the Second Amended Complaint.  Even if the Court considered the exhibits attached to the Amended Complaint which it can identify and understand – in an attempt to read Plaintiffs' Second Amended Complaint liberally by assuming that Plaintiffs intended to incorporate the exhibits attached to the Amended Complaint – the outcome of the pending motions to dismiss would be the same.

against local governmental entities) (citing 745 Ill. Comp. Stat. 10/8–101).

I.      **Plaintiffs Have Not Alleged Sufficient Facts to State Any Claim Against the Trustees**

Plaintiffs named the Village of Monee Board of Trustees, Trustee Popp, Trustee Farquhar, and Trustee Stockon (collectively, the "Trustees") as defendants in both their "official and individual/personal capacit[ies]." (SAC ¶ 6.)  Specifically, Plaintiffs include the Trustees as defendants in fourteen counts – Counts I, V, VII, XII, XIII, XIV (mislabeled VX), XV, XVI, XVII, XVIII, IXX, XX, XXII, and XXIV.  Plaintiffs fail, however, to offer any factual allegations to support any claim against the Trustees.  Indeed, there is only one paragraph in Plaintiffs' sixty-six page Second Amended Complaint alleging specific conduct by any Trustee. Specifically, in paragraph fifty-four, Plaintiffs allege: "Trustee Stockon intentionally misled the Village of Monee Board of Directors by informing the Board members that there was a 'Residential Noise Ordinance' in place for loud noise when he in fact was fully aware that no such ordinance exists." (SAC ¶ 54.)  Notably, this allegation does not identify any conduct by Trustees Popp or Farquhar.  Plaintiffs also fail to connect this allegation, which appears in the general background section of the Second Amended Complaint, to conduct at issue in any particular claim.

As noted above, when Plaintiffs filed their Second Amended Complaint they failed to attach any exhibits, although they reference exhibits throughout.  Even if the Court were to assume that Plaintiffs intended to incorporate the exhibits attached to the initial Complaint or Amended Complaint, Exhibit G – which Plaintiffs cite to as the source of Trustee Stockton's alleged misrepresentation – does not save their claims against even Trustee Stockon.  Exhibit G – Minutes of the Regular Village Board Meeting on July 13, 2011 – merely states that, after

11

Trustee Farquhar stated that he could not find an ordinance regarding loud noise, "Stockon stated that he believes the Village does in fact have an ordinance regarding noise." (R. 7, Compl. Ex. G at 2.) Even if the Court considered this exhibit when evaluating the Second Amended Complaint, these notes of what Stockon stated he believed about a noise ordinance do not state a fact sufficient to assert any claim against Trustee Stockton, let alone any other Trustee. Because Plaintiffs do not allege any factual basis for any claims against the Trustees sufficient to pass muster under Rule 8, the Court dismisses all claims against the Trustees. The Court dismisses the claims against the Trustees in their official capacities with prejudice because those claims are treated as claims against the Village of Monee, who is a named defendant in this case. *See Albritton v. Village of Dolton*, No. 10 C 7581, 2011 WL 4501418, at *5 (N.D. Ill. Sep. 28, 2011) (citing *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008)). The Court dismisses Plaintiffs' claims against the Trustees in their personal capacities without prejudice.

## II. Count I - Civil Conspiracy Under 42 U.S.C. §§ 1982, 1983, and 1985(3)

In Count I, Plaintiffs allege that Chief Caruso, Chief Cipkar, Officer Drumm, the Monee Officers, and the Neighbors violated 42 U.S.C. §§ 1982, 1983, and 1985(3) by conspiring to "racially discriminate against Plaintiff due to the race/color and to try and Force Plaintiff to move from the community by filing numerous false allegations against Plaintiff, Plaintiff's Family, Plaintiff's business associates and Plaintiffs Friends." (SAC ¶ 43.) Specifically, Plaintiffs allege that Defendants knowingly and intentionally schemed, over a period spanning from August 15, 2007 to August 27, 2011, to create false police reports, harass, oppress, discriminate against, and incarcerate Kenneth. Plaintiffs allege that Defendants conspired and discriminated against them based on their African-American descent. (*See, e.g.,* SAC ¶¶ 47-54.)

Plaintiffs' specific allegations include that the Neighbors made false statements to Chief Caruso, Chief Cipkar, Officer Drumm, and the Monee Officers on multiple occasions. (*See, e.g.,* SAC ¶¶ 16, 21, 23, 47-54.) Plaintiffs also allege that Chief Caruso, Chief Cipkar, Officer Drumm, and the Monee Officers "made out false and incomplete official reports and gave a false and incomplete version of the events to other police officers investigating the incident in order to cover up his/her own conduct." (SAC ¶ 45.) Plaintiffs further allege that Chief Caruso, Chief Cipkar, Officer Drumm, and the Monee Officers have continuously trespassed on Kenneth's property and have threatened to arrest him "in an excess of over FIFTY times in the past five (5) years." (SAC ¶ 55(c).) According to Plaintiffs, Defendants' conspiracy deprived Kenneth of his constitutional rights protected by the First, Fourth, and Fourteenth Amendments of the Constitution. (SAC ¶ 42.) Defendants argue that Plaintiffs have not alleged a sufficient agreement between the co-conspirators to support a conspiracy under any of these statutes. (Bachands' MTD at 8; Cateys' MTD at 8-9; Monee Defendants' MTD at 5.)

## A. The Neighbors as Co-Conspirators

Here, Plaintiffs make only conclusory allegations regarding any agreement between the Neighbors and the officer-Defendants. Specifically, Plaintiffs allege that Defendants "acted in concert pursuant to an agreement" (SAC ¶ 42) and "knowingly and intentionally schemed and worked together in a common plan" (SAC ¶ 43). In reference to a Section 1983 conspiracy, the Seventh Circuit teaches that:

> [i]t is not sufficient to allege that the (private and state) defendants merely acted in concert or with a common goal. There must be allegations that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding. Even were such allegations to be made, they must further be supported by some factual allegations suggesting such a "meeting of the minds."

*Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206 (7th Cir. 1980) (citing *Sparkman v. McFarlin*, 601 F.2d 261, 268 (7th Cir. 1979) (en banc) (concurring opinion of Sprecher, J.)). The Seventh Circuit dismissed *Tarkowski*'s complaint for failure to state a claim because he failed to assert any factual basis suggesting a meeting of the minds necessary to establish a claim even though the defendant neighbors shared a common purpose – discriminatorily enforcing zoning ordinances – with the defendant prosecutors. *Id.* Notably, in *Tarkowski* – as here – the plaintiff was *pro se*. The Seventh Circuit concluded that even *pro se* complaints must "meet some minimum standard of particularity." *Id.* at 1207. The Seventh Circuit also noted that "[i]n many cases of conspiracy essential information can only be produced through discovery, and the parties should not be thrown out of court before being given an opportunity through that process to ascertain whether the linkage they think may exist actually does." *Id.* at 1208.

Here, Plaintiffs' allegations differ from cases where courts have found sufficient allegations to support an agreement between co-conspirator officers and a citizen. In *James v. Village of Willowbrook,* for example, Chief Judge Holderman found that a complaint sufficiently alleged a conpsiracy between neighbors and officers in part because there was "an explicit allegation of collusion," namely that the officers and neighbors met one evening to discuss how to deal with the plaintiff's family living in the neighborhood. No. 11-cv-9126, 2012 WL 3017889, at *10 (N.D. Ill. Jul. 19 2012). In *Gardunio v. Town of Cicero*, the court refused to dismiss a complaint which alleged that the officer and citizen agreed to unlawfully detain the plaintiff and that the officer specifically acted at the direction of the individual. 674 F. Supp. 2d 976, 986 (N.D. Ill. 2009). Here, there are no factual allegations of any explicit meeting or directive between the Neighbors and the officers. Plaintiffs simply have not alleged sufficient

facts to show that an agreement was plausible. *See Cooney v. Rossiter*, 583 F.3d 967, 971 (7th

Cir. 2009) (plaintiff alleging civil conspiracy "must meet a high standard of plausibility" before

defendants "in such a case become entangled in discovery proceedings"); *see also Krisher v.*

*Krisher*, No. 3:09-CV-83-TS, 2009 WL 3568664, at *6 (N.D. Ind. Oct. 26, 2009) (finding that

plaintiff's allegations of an agreement between an officer and a private citizen were not plausible

even thought it was conceivable that they reached an agreement to threaten to arrest plaintiff on

the citizen's complaint). Additionally, Plaintiffs failed to link each Neighbor with any of the

alleged false statements to the officers – the only facts supporting the Neighbors' role in the

alleged conspiracy. The Court, therefore, dismisses Count I against the Neighbors without

prejudice.

Because the Court dismisses Count I as to the Neighbors, Plaintiffs' conspiracy claim

under 42 U.S.C. § 1985(3) against the other Defendants is superfluous. Because the "function of

§ 1985(3) is to permit recovery from a private actor who has conspired with state actors" and "all

[the remaining] defendants are state actors, [] a § 1985(3) claim does not add anything except

needless complexity." *Fairley v. Andrews,* 578 F.3d 518, 526 (7th Cir. 2009) (citing *Dennis v.*

*Sparks*, 449 U.S. 24, 101 S. Ct. 183, 66 L. Ed .2d 185 (1980); *Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). The Court, therefore, dismisses Plaintiff's

Section 1985(3) claim without prejudice.

### B.     Officers as Co-Conspirators

Although Plaintiffs have not sufficiently alleged the Neighbors conspired with Chief

Caruso, Chief Cipkar, Officer Drumm, and the Monee Officers, Plaintiffs have sufficiently

alleged that the officers conspired among themselves. The Seventh Circuit's opinion in

*Geinosky v. City of Chi.,* 675 F.3d 743, 749 (7th Cir. 2012), is instructive here. In *Geinosky*, the Seventh Circuit found allegations of conspiracy among officers sufficient even though the complaint made only conclusory allegations of direct conspiracy because the plaintiff alleged a "pattern of harassment by several officers over a period of months." *Id.* The court stated that "[i]t is a challenge to imagine a scenario in which the harassment would not have been the product of a conspiracy." *Id.* Similarly, here, Plaintiffs allege numerous acts of harassment and threats by various officers from the Village of Monee Police Department over many years. Plaintiffs even allege that officers have threatened to arrest him on over fifty occasions. (SAC ¶ 55(c).) This pattern of behavior, along with Plaintiffs' allegations of an agreement and a scheme, are sufficient to state a claim at this stage. *See Geinosky*, 675 F.3d at 749 ("If several members of the same police unit allegedly acted in the same inexplicable way against a plaintiff on many different occasions, we will not dismiss a complaint for failure to recite language explicitly linking these factual details to their obvious suggestion of collusion.").

The Monee Defendants additionally argue that "Plaintiffs' claim pursuant to Section 1982 [] fails as Plaintiffs have not alleged an impairment of property interests." (Monee MTD at 5.) Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. According to Chief Judge Holderman, "several judges in this district have held that harassing acts directed at property owners with the goal of intimidating them in the use or occupancy of their property can run afoul of § 1982's protection of the right to 'hold' property." *James*, 2012 WL 3017889 at *11-12 (collecting cases). Moreover, as noted by Chief Judge Holderman, "[a]lthough the Seventh

Circuit has not directly addressed the question, it has suggested that § 1982's protection of a citizen's right to 'hold' property includes a prohibition on racial discrimination in the provision of services or facilities to property owners." *Id*. (citing *Bloch v. Frischholz*, 587 F.3d 771, 772, 775 n. 5 (7th Cir. 2009) (en banc)). Here, Plaintiffs allege that the aim of Defendants' conspiracy of harassment, oppression and incarceration was to force Kenneth to move from the community and also to deprive Plaintiffs of the right to peacefully enjoy Kenneth's home. (SAC ¶¶ 43, 55.) Viewing the facts in the light most favorable to Plaintiffs, they have sufficiently alleged a Section 1982 conspiracy against Chief Caruso, Chief Cipkar, Officer Drumm, and the Monee Officers.

## III.    Other Claims Under 42 U.S.C. § 1983

Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. The Court addresses each of Plaintiffs' additional claims under Section 1983 in turn.

### A.    Count II - Excessive Force Against Caruso, Cipkar, Officer Drumm and the Monee Officers

Plaintiffs allege that Chief Caruso, Chief Cipkar, Officer Drumm, and the Monee Officers violated Kenneth's Fourth Amendment right to be free from the use of excessive and unreasonable force. (SAC ¶ 61.) Specifically, Plaintiffs allege that, on June 26, 2010, Officer Drumm held a gun to Kenneth's head; choked Kenneth around his neck preventing him from breathing; slammed Kenneth to the concrete ground face-first; jabbed his knees into Kennth's back; and applied extreme pressure to Kenneth's head to force him into the squad car while

jabbing him in the neck. (SAC ¶ 62.) Plaintiffs also allege that, on June 17, 2011, Officer

Cresenti put handcuffs on Kenneth too tightly "causing extreme pain and unnecessary

discomfort." (SAC ¶ 64.)

As noted by the Monee Defendants, nowhere do Plaintiffs allege any personal

involvement in either incident by Chief Caruso or Chief Cipkar, or Officers Lazzaroni, Blake,

Fowler, Cash and Jones. (Monee MTD at 6.) To support a Section 1983 claim, a "Plaintiff must

plead that each government official Defendant, through the official's own individual actions, has

violated the constitution." *Iqbal*, 556 U.S. at 676. Because Plaintiffs have failed to do so, the

Court dismisses their excessive for claims against Chief Caruso, Chief Cipkar, or Officers

Lazzaroni, Blake, Fowler, Cash and Jones, they must properly plead that each of these officers

personally violated Kenneth's constitutional rights by using excessive force.

The Monee Defendants further argue that "the specific allegation against [Officer]

Crescenti does not state a cause of action, because Plaintiff does not allege that he complained to

[Officer] Crescenti that the handcuffs were too tight or painful." (Monee MTD at 7.) The

Monee Defendants provide no citation, however, to support the proposition that a Plaintiff must

plead that he made such complaints. A plaintiff may prevail on an excessive force claim if the

officer's use of force is unreasonable based on the totality of the circumstances at the time of the

arrest. *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (citation omitted).

Plaintiffs's allegations that Officer Cresenti's use of the handcuffs was painful and caused

unnecessary discomfort sufficiently assert a claim for excessive force to survive a motion to

dismiss. (SAC ¶ 64); *see also Tibbs v. City of Chi.*, 469 F.3d 661, 665-66 (7th Cir. 2006)

(stating that the Seventh Circuit has recognized valid excessive force claims based on overly

tight handcuffs); *Payne v. Pauley,* 337 F.3d 767, 779 (7th Cir. 2003) (finding that "it was unlawful to use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting arrest, did not disobey the orders of a police officer, did not pose a threat to the safety of the officer or others, and were suspected of committing only minor crimes"). The Court cannot assess the reasonableness of Officer Cresenti's use of overly tight handcuffs at this stage.

The Monee Defendants concede that the June 26, 2010 incident states a cause of action against Officer Drumm. The Court, therefore, denies the Monee Defendants' motion as to Count II.

### B. Counts III and IV - *Monell* Claims against Village of Monee

In Counts III and IV, Plaintiffs assert overlapping *Monell* claims against the Village of Monee. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). As the Seventh Circuit teaches, "*Monell* recognized that the premise behind a § 1983 action against a government body is 'the allegation that official policy is responsible for the deprivation of rights.'" *Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293, 306 (7th Cir. 2010) (citation omitted) (emphasis in original); *see also Milestone v. City of Monroe, Wis*., 665 F.3d 774, 780 (7th Cir. 2011)) ("There is no respondeat superior liability under § 1983; the Supreme Court 'distinguish[es] acts of the *municipality* from acts of *employees* of the municipality.'") (citation omitted) (emphasis in original). To establish liability against the Village of Monee on a *Monell* claim, Plaintiffs must show that: (1) they suffered a deprivation of a constitutional right, (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policymaking authority, that (3) proximately caused their

constitutional injuries. *See Ovadal v. City of Madison*, 416 F.3d 531, 535 (7th Cir. 2005); *see also Obrycka v. City of Chi.*, No. 07 C 2372, 2012 WL 601810, at * 6 (N.D. Ill. Feb. 23, 2010).

Specifically, in Count III Plaintiffs allege that "the actions of Chief Caruso, Chief Cipkar, Police Officers Lazzaroni, Blake, Cresenti, Fowler, Cash, Jones and Drumm as alleged in the [Second Amended Complaint] were done pursuant to, and as a result of" certain practices, policies and customs of the Village of Monee, including:

> a. false arrests, use of excessive force, and conducting illegal searches;
>
> b. denying needed medical care to arrestees;
>
> c. a *code of silence* in which police officers fail ro report police misconduct;
>
> d. failure to adequately train, supervise and discipline police officers in the categories and fields of police work addressed above; and/or
>
> e. failure to adequately investigate citizen complaints against police officers.

(SAC ¶¶ 69-70.) Plaintiffs merely list these "practices, policies and customs" and do not connect them to any particular allegations in the Second Amended Complaint. Notably, there are no allegations in the Second Amended Complaint relating to medical care given to arrestees, training or officers, officers failing to report misconduct, or failure to investigate complaints against police officers.

Similarly, in Count IV, Plaintiffs provide an even longer list of practices, policies, and customs – some of which are duplicative of those alleged in Count III – which allegedly resulted in certain actions alleged in the Second Amended Complaint. (SAC ¶¶ 73-74.) Once again, Plaintiffs fail to assert any specific facts relating to any specific practice, policy or custom. As in Count III, Plaintiffs also include practices, policies, and customs wholly unrelated to any allegations contained anywhere in the lengthy Second Amended Complaint.

20

Although the Court interprets Plaintiffs' *pro se* Second Amended Complaint liberally, and Plaintiffs incorporate every preceding paragraph into Counts III and IV, Plaintiffs' allegations do not sufficiently put Defendants on notice of the allegedly illegal conduct at issue in Counts III and IV.  The Court will not attempt to mine Plaintiffs' sixty-six page, twenty-four count Second Amended Complaint for the "actions" contained therein which were allegedly "done pursuant to, and as a result of" one or more of the practices, policies, and customs listed, yet to which Plaintiffs make no specific reference in these counts.  (SAC ¶¶ 70, 74.)  Moreover, at most, Plaintiffs have alleged facts –  elsewhere in the Second Amended Complaint – regarding an officer or officers using excessive force, conducting illegal searches, and falsely arresting Kenneth, though they do not allege that these specific actions occurred as a result of a policy or practice of the Monee Police Department.  Because Plaintiffs merely pled threadbare recitals of many different possible *Monell* claims, rather than specific factual allegations supporting a particular practice or policy, they have not "give[n] the defendant[s] fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 570.  The Court, therefore, dismisses Counts III and IV without prejudice.

C.    **Count V - Unreasonable Seizure against Caruso, Cipkar, the Monee Officers and Officer Drumm**

In Count V, Plaintiffs allege that Chief Caruso, Chief Cipkar, the Monee Officers, and Officer Drumm seized Kenneth – without a warrant, reasonable suspicion, or probable cause – on or around June 26, 2010, July 17, 2011, and August 27, 2011 while acting within the scope of their employment as police officers of the Village of Monee.  (SAC ¶ 79.)  Defendants argue that this claim fails because Plaintiffs do not identify which officer(s) seized Kenneth during each alleged encounter.  (Monee MTD at 8.)  "It is well-settled that 'Section 1983 creates a cause of

action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.'" *Ford v. Wexford Health Sources, Inc*., No. 12 C 4558, 2013 WL 474494, at *5 (N.D. Ill. Feb. 7, 2013) *(*quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). Although Plaintiffs do not identify which specific officer seized Kenneth on which date, Plaintiffs do identify the officers at issue by name. *Contra Stoller v. Dart*, No. 12 C 4928, 2013 WL 2156049, at *5 (N.D. Ill. May 17, 2013) (finding that the plaintiff failed to state a Section 1983 claim when he named John Doe defendant officers). The Second Amended Complaint, therefore, provides those officers with specific notice of the alleged claims. After discovery, however, Plaintiffs must identify the specific officers who effectuated each alleged illegal seizure.

Furthermore, "[a]n arrest, of course, is the archetypical 'seizure' of a person under the Fourth Amendment." *Abbott v. Sangamon Cnty., Ill*., 705 F.3d 706, 719 (7th Cir. 2013). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott*, 705 F.3d at 714 (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012); *see also Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)). Plaintiffs have alleged that the named officers and police chiefs illegally seized him by arresting him on certain dates without probable cause, as part of a larger conspiracy to arrest and harass him for discriminatory reasons. (*See, e.g.,* SAC ¶¶ 78-80.) Reading the Second Amended Complaint liberally, and making all inferences in Plaintiffs' favor, Plaintiffs sufficiently state a claim under Count V.

**D.     Count VI - Failure to Intervene against Caruso, Cipkar, Officer Drumm, and the Monee Officers**

Plaintiffs allege that Chief Caruso, Chief Cipkar, Officer Drumm, and the Monee Officers failed to intervene when Officer Drumm allegedly used excessive force against Kenneth.  (SAC ¶¶ 83-89.)  A police officer who fails to intervene to prevent another law enforcement officer from violating a plaintiff's constitutional rights can be held liable under Section 1983 if the plaintiff can establish that the police officer: "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring."  *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009); *see also Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005).

Specifically, Plaintiffs allege that, on June 26, 2010, Officer Drumm used excessive force including choking Kenneth, slamming Kenneth's face on the ground, placing his knees in Kenneth's back, and punching Kenneth in the neck.  (*Id*. ¶ 84.)  According to Plaintiffs, Officers Cresenti, Fowler, Cash, and Jones "had an opportunity to intervene, but chose not to intervene."  (*Id*. ¶ 86.)  Plaintiffs also state that they had complained to Chief Caruso and Chief Cipkar about previous harassment by Officer Drumm.  (*Id*. ¶ 85.)

Because Officer Drumm cannot possibly intervene to stop his own conduct, the Court dismisses Count VI as to Officer Drumm with prejudice.  Plaintiffs' claim also fails as to Officer Lazzaroni, Officer Blake, Chief Caruso, and Chief Cipkar because they do not allege that those officers had an opportunity to intervene.  At most, Plaintiffs allege that they had made complaints to Chief Caruso and Chief Cipkar about Officer Drumm's "previous attempts to harass and arrest" Kenneth.  (*Id*. ¶ 85.)  Plaintiffs do not even allege that they previously

complained about any excessive force by Office Drumm.  Even viewing these allegations in the

light most favorable to Plaintiffs, they do not allege that Chief Caruso or Chief Cipkar knew that

Officer Drumm was using excessive force or had a reasonable opportunity to stop him.  They

also do not provide any factual allegations showing that Officers Lazzaroni or Blake were

present or had any opportunity to intervene.  The Court, therefore, dismisses without prejudice

Count VI as to Chief Caruso and Chief Cipkar as well.  Viewing the Second Amended

Complaint liberally, and considering it in its entirety, Plaintiffs have sufficiently pled that

Officers Cresenti, Fowler, Cash, and Jones participated in the arrest of Kenneth on June 26, 2010

and had an opportunity to intervene when Officer Drumm choked, shoved, and punched

Kenneth, yet did not intervene.  (*See, e.g.,* SAC ¶¶ 20, 79, 80, 85-87.)  The court denies the

Monee Defendants' motion to dismiss Count VI as to Officers Cresenti, Fowler, Cash, and

Jones.

     **E.**     **Count VII - Equal Protection - Class of One - against Caruso, Cipkar, Drumm, the Monee Officers, and the Neighbors**

In Count VII, Plaintiffs allege that Chief Caruso, Chief Cipkar, Officer Drumm, the

Monee Officers, and the Neighbors violated the Equal Protection Clause of the Fourteenth

Amendment.  (SAC ¶¶ 90-100.)  "Although the standard for a class-of-one equal protection

claim . . . currently is unsettled in this circuit, *see Del Marcelle v. Brown Cnty. Corp*., 680 F.3d

887 (7th Cir.) (en banc) (5–5 division resulting in no controlling opinion), cert. denied, ––– U.S.

––––, 133 S. Ct. 654, 184 L. Ed. 2d 461 (2012), the claim at a minimum would require proof that

the [officers] intentionally treated [Plaintiffs] differently from others situated similarly to [them]

for no rational reason." *Williamson v. Curran*, 714 F.3d 432, 449 (7th Cir. 2013); *see also*

*Geinosky v. City of Chi*.,  675 F.3d 743, 747 (7th Cir. 2012) (quoting *Engquist v. Oregon Dept.*

*of Ag.,* 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).

As a threshold matter, Plaintiffs cannot assert a 42 U.S.C. § 1983 equal protection claim against the Neighbors because, as explained in Section II regarding Count I, Plaintiffs have not sufficiently alleged that the Neighbors conspired with the Monee Officers or police chiefs to violate Plaintiffs' constitutional rights. Plaintiffs, therefore, have not pled that the Neighbors acted under color of state law to support a Section 1983 equal protection claim.

Plaintiffs' remaining allegations relate to actions by Chief Cipkar, Chief Caruso, Officer Drumm, and the Monee Officers. The Seventh Circuit recognizes "class-of-one" claims against police officers for irrational or malicious application of their law enforcement powers. *Williamson*, 714 F.3d at 449. Plaintiffs, however, fail to explain why Stanley Catey and Theresa Catey or other neighbors referenced in paragraphs ninety-five and ninety-six are "similarly situated" to them other than the fact that they are neighbors. "To be considered 'similarly situated,' a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects. *LaBella Winnetka v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (citing *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)). Plaintiffs merely allege that on certain dates the Officers threatened to ticket and tow vehicles parked on Plaintiffs' grass, issue animal nuisance citations to Plaintiffs, and issue building permit violations to Plaintiffs, yet, on other occasions, officers did not make such threats to Plaintiffs' neighbors who Plaintiffs allege behaved in "similar" ways. (SAC ¶¶ 94-96.) Plaintiffs do not provide any factual description of these neighbors, the number of cars on their or their neighbors' grass, the time of day of these various incidents, the type of animals

the neighbors have, the proximity of these neighbors' homes to Plaintiffs', or any other facts to support Plaintiffs' conclusory statements that these various neighbors were similarly situated to Plaintiffs. Even viewing the facts in the light most favorable to Plaintiffs, therefore, they have not sufficiently alleged an Equal Protection claim. The Court, therefore, dismisses Count VII without prejudice.

### F. Count VIII - False Arrest against Caruso, Cipkar, Officer Drumm, and the Monee Officers

In Count VIII, Plaintiffs allege that Chief Caruso, Chief Cipkar, Officer Drumm, and the Monee Officers falsely arrested him on six occasions – on or around July 11, 2009, June 10, 2010, June 26, 2010, July 9, 2011, July 17, 2011, and August 29, 2011. (SAC ¶¶ 102-105.) First, Defendants cannot base a false arrest claim on conduct which occurred on July 11, 2009 or June 12, 2010 because those incidents, which were not ongoing acts, occurred more than two years before Plaintiffs filed their initial Complaint on June 25, 2012. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012) ("the statute of limitations for a § 1983 claim in Illinois is two years"); *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) ("In Illinois, the statute of limitations period for § 1983 claims is two years."). In general, claims under Section 1983 accrue when a plaintiff knows or should know that his or her constitutional rights have been violated. *See Logan v. Wilkins,* 644 F.3d 577, 582 (7th Cir. 2011). Plaintiffs would have known of the alleged false arrest on the day which it happened. *See Wallace v. Kato,* 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (We hold that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."). Plaintiffs, therefore, have pled themselves out of court regarding

their time-barred July 11, 2009 and June 12, 2010 claims. The Court, therefore, dismisses Count XIX as to these claims with prejudice.

The Monee Defendants argue that Plaintiffs' claims regarding the remaining four dates fail because Plaintiffs "fail to identify which officer(s) actually seized [Kenneth] during each alleged encounter." (Monee MTD at 8.) As discussed above, however, Plaintiffs have identified only a handful of officers by name whom he alleges participated in these false arrests. Their failure to specifically link a particular officer with a particular arrest at this time, prior to discovery, is not fatal, particularly because these officers are sufficiently on notice based on the dates alleged. *Twombly*, 550 U.S. at 555.

Regarding the remaining alleged instances of false arrests, Plaintiffs allege that officers threatened to arrest him on July 9, 2011,[2] thereby forcing him to remain in his home or risk arrest, and officers arrested him without probable cause on three dates – June 26, 2010, July 17, 2011 and August 29, 2011. (SAC ¶¶ 102-105.) "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott,* 705 F.3d at 714 (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012); *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.

___

[2] The Monee Defendants do not contest Plaintiffs' inclusion of the July 9, 2011 incident as part of their false arrest claims in Count XIV. Notably, although Defendants did not formally arrest Kenneth on that day, they attempted to arrest him and thereby terminated his freedom of movement in a manner that a "reasonable person in [his] position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). Making all inferences in Plaintiffs' favor, the Court considers Kenneth to have been "arrested" on July 9, 2011 for purposes of this motion.

Ct. 2627, 61 L. Ed. 2d 343 (1979); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S .Ct. 223, 13 L. Ed. 2d 142 (1964)).  Throughout Plaintiffs' Second Amended Complaint they state that the officers repeatedly harassed Kenneth, arrested him without probable cause, and completed false police reports, based on statements they were false given to them by Neighbors.  (*See, e.g.,* SAC ¶¶ 26, 29, 30, 31, 36, 54, 57, 70, 108, 166.)  Viewing the facts in the light most favorable to Plaintiffs, they have sufficiently stated a claim for false arrest on June 26, 2010, July 9, 2011, July, 17, 2011, and August 29, 2011.

> **G.     Counts IX, X, and XI - Unreasonable Search of a Person, Home and Vehicle against Caruso, Cipkar, Drumm, and the Monee Officers**

In Counts IX, X, and XI, Plaintiffs allege that Chief Caruso, Chief Cipkar, Officer Drumm, and the Monee Officers searched Kenneth and Plaintiffs' home, property, and vehicle in violation of the Fourth Amendment on multiple occasions between June 21, 2008 and August 27, 2011.  (SAC ¶¶ 113, 120, 127.)  The searches which allegedly occurred prior to June 25, 2010, however, are time-barred by the two-year statute of limitations applicable to Section 1983 claims in Illinois.  *See Gomez,* 680 F.3d at 864 (7th Cir. 2012).

Regarding the remaining dates, the Monee Defendants argue that this claim fails because Plaintiffs do not specifically identify which officer conducted which search on which day. (Monee MTD at 10-11.)  As previously discussed, the Court finds Plaintiffs' allegations – which include a handful of officers' names and specific dates – sufficient at this stage to put the officers on notice.  Plaintiffs fail, however, to identify the address of the home which the officers allegedly conducted the searches, the vehicle allegedly searched, when the searches occurred relative to other events Plaintiffs allege occurred on those dates, where the officers searched Kenneth, or which type of search – of person, home, or vehicle – occurred on which day.  While

it is understandable that Plaintiffs may not know which officer took which action on which day, Plaintiffs should know on which of these dates the alleged searches occurred. The Court, therefore, dismisses Counts IX, X, and XI without prejudice. Plaintiffs may amend these counts to include additional factual allegations about each of the alleged searches, including the dates, what vehicle or property the officers allegedly searched, and, if possible, the officers who conducted each search.

**H.     Count XIII - Substantive Due Process - Egregious Abuse of Power - against Cipkar, Officer Drumm, and the Monee Officers**

In Count XIII, Plaintiffs allege that, on five occasions, Chief Cipkar, Officer Drumm, and the Monee Officers violated his substantive due progress rights through an "egregious arbitrary abuse of government power" by threatening to arrest him when he was not violating any law. (SAC ¶¶ 138, 143.) As discussed above, the statute of limitations for a Section 1983 claim is two years. Plaintiffs' allegations of events which occurred on May 11, 2009, July 11, 2009 and January 3, 2010, therefore, are time-barred. The Court dismisses Count XIII as to those claims with prejudice.

Regarding the July 10, 2010 and July 9, 2011 allegations, the Monee Defendants argue that "Plaintiffs' substantive due process claim fails because they have not alleged any substantive due process right." (Monee MTD at 13.) "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver,* 510 U.S. 266, 272, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994). Here, Plaintiffs vaguely allege a deprivation of Kenneth's liberty and property stemming from threats to arrest him. (SAC ¶ 141.) Defendants further argue that these allegations cannot support a substantive due process claim because they are "not distinct from

[Plaintiffs'] Fourth Amendment claims." (Monee MTD at 13.) Indeed, the Supreme Court has repeatedly held that where a particular "Amendment provides an explicit textual source of constitutional protection against [a particular sort of government behavior], that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *see also U.S. v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997) ("if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under [that] standard"). Seventh Circuit law on this issue is similarly clear. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 476 (quoting *Doe v. Heck*, 327 F.3d 492, 518 n. 23 (7th Cir. 2003) ("[S]ubstantive due process may not be called upon when a specific constitutional provision . . .protects the right allegedly infringed upon."); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1017–18 (7th Cir. 2000). Because Plaintiffs do not respond to any of Defendants' substantive claims in their motions to dismiss, Plaintiffs do not identify how their substantive due process claim is distinct from their claims under the Fourth Amendment.

Furthermore, the scope of substantive due process is very limited and protects plaintiffs only against arbitrary government action that "shocks the conscience." *Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th Cir. 2005) (quoting *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005)); *see also Rochin v. California*, 342 U.S. 165, 172, 72 S. Ct. 205, 96 L. Ed. 2d 183 (1952). "[O]nly the most egregious official conduct is arbitrary in the constitutional sense," and plaintiffs bringing due process claims will be successful only where there is "an extraordinary departure from established norms." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (internal quotation marks omitted); *see also Dunn v. Fairfield*

*Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 966 (7th Cir. 1998)).  The Monee Defendants argue that a threat of arrest "is not the sort of conscience shocking conduct that supports a substantive due process claim."  (Monee MTD at 14.)  The Court agrees.  The Court, therefore, dismisses Count XIII with prejudice.

## I.     Count XXIII - Unlawful Seizure against Caruso, Drumm, and the Monee Officers

In Count XXIII, Plaintiffs allege that on or around June 26, 2010, Chief Caruso, Officer Drumm, and the Monee Officers unlawfully towed a vehicle from Kenneth's garage and thereby seized the vehicle in violation of the Fourth Amendment.  (SAC ¶ 216.)  Plaintiffs allege that the officers did not tow the vehicle in furtherance of public safety or community caretaking functions.  (*Id*.)  They also allege that the vehicle was not violating parking ordinances, jeopardizing public safety, or interfering with efficient movement of vehicular traffic.  (*Id*.)  Plaintiffs do not allege that the officers lacked a warrant or probable cause to seize the vehicle.

According to the Seventh Circuit, "[i]n general, seizures of personal property are unreasonable within the meaning of the Fourth Amendment unless accomplished pursuant to a judicial warrant."  *U.S. v. Burgard*, 675 F.3d 1029, 1032 (7th Cir. 2012) (quotations omitted).  "An officer may temporarily seize property without a warrant, however, if she has 'probable cause to believe that a container holds contraband or evidence of a crime' and 'the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.'"  *Id.*  (quoting *U.S. v. Place*, 462 U.S. 696, 701, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983)).  Based on Plaintiffs' allegations, it is unlikely that the driving violations which prompted Kenneth's arrest on June 26, 2010 included any contraband that would have justified a seizure.  (*See, e.g.,* SAC ¶¶ 102, 163); *cf. Armour v. Country Club Hills*, No. 11 C 5029, 2012

WL 4499050, at *3 (N.D. Ill. Sep. 27, 2012) (finding that the plaintiff's unreasonable seizure claim failed to state a claim in part because the complaint clearly indicated that there was a lawful basis for the seizure, namely that it contained evidence). Viewing the facts in the light most favorable to Plaintiffs, they have sufficiently pled an unreasonable seizure when these Defendants towed his car incident to his arrest even though it presented no public safety issue. *See, e.g., U.S. v. Cherry,* 436 F.3d 769, 774 (7th Cir. 2006) ("[Officers'] authority to order such a tow in the interest of public safety is unassailable.").

## IV. State Law Claims

### A. Count XII - Abuse of Process against Caruso, Cipkar, Officer Drumm, the Monee Officers, and the Neighbors

In Count XII, Plaintiffs assert an abuse of process claim against Chief Caruso, Chief Cipkar, the Monee Officers, Officer Drumm, and the Neighbors based on the Defendants' discriminatory conduct on eight dates between June 21, 2008 to August 27, 2011. (SAC ¶ 132.) Under Illinois law, to prevail on an abuse of process claim a plaintiff must show: "(1) some act in the use of the legal process not proper in the regular prosecution of such proceedings, and (2) the existence of an ulterior purpose or motive." *Holly v. Boudreau,* 103 Fed. App'x. 36, 39 (7th Cir. 2004) *(citing Neurosurgery & Spine Surgery, S.C. v. Goldman,* 339 Ill. App. 3d 177, 183, 274 Ill. Dec. 152, 790 N.E.2d 925 (Ill. App. Ct. 2003))*; Kirchner v. Greene*, 294 Ill. App. 3d 672, 683, 229 Ill. Dec. 171, 691 N.E.2d 107 (Ill. App. Ct. 1998). "The elements are strictly construed, as the tort of abuse of process is not favored under Illinois law." *Kumar v. Bornstein,* 354 Ill. App. 3d 159, 166,1173, 290 Ill. Dec. 100, 820 N.E.2d 1167 (Ill. App. Ct. 2004).

Plaintiffs allege that Chief Caruso, Chief Cipkar, the Monee Officers, Officer Drumm, and the Neighbors discriminatorily "us[ed] the process of Monee law enforcement resources,"

and "used the legal procedure to file false police reports, file false charges," and "falsely arrest and incarcerate" Plaintiffs. (*Id.* ¶¶ 132, 134.) Plaintiffs fail, however, to allege any abuse of legal or court process. "'Process' is defined 'as any means used *by the court* to acquire or exercise jurisdiction over a person or over specific property.'" *Kirchner*, 294 Ill. App. 3d at 684 (quoting *Arora v. Chui*, 279 Ill. App. 3d 321, 331, 216 Ill. Dec. 173, 664 N.E.2d 1101 (Ill. App. Ct. 1996) (emphasis in original)); s*ee also Evans v. West*, 935 F.2d 922, 923 (7th Cir. 1991) ("Absent an inappropriate act in the regular prosecution of a suit, an abuse of process action will not lie.") (internal quotation omitted). In *Rubloff Dev. Grp, Inc. v. Supervalu, Inc*., the court explained:

> "Process" is not used here in the general sense—as in "the legal process" of suing someone, prosecuting the case, receiving judgment, etc. Rather it is used in the literal, legal sense of something issued by the court. 'Process' is issued by the court, under its official seal and must be distinguished from pleadings, which are created and filed by the litigants.

No. 10 C 3917, 2012 WL 1032784, at *12 (N.D. Ill. Mar.27, 2012).

Plaintiffs' allegations of misuse of law enforcement resources and of false arrest procedures – which at most relate to the initiation of legal proceedings – do not concern any *process*. *Friello*, 2012 WL 4892856, at *9 ("Alleging that a defendant has instigated legal proceedings, even with 'no probable cause' and 'malice, and/or an improper motive, as [the plaintiff] has alleged, does not constitute an abuse of process claim."); *Elliott v. Spencer*, No. 92-C-20082, 1992 WL 332291, at *7 (N.D. Ill. Oct. 23, 1992) ("Filing charges does not have any relation to any process of the court."). Specifically, Plaintiffs' allegations do not include conduct subsequent to or attributable to any issuance of the court. Indeed, "[t]he mere institution of a proceeding, even if brought simply to harass the other party or to coerce a settlement, does not

constitute abuse of process." *Shield Techs. Corp. v. Paradigm Positioning, LLC,* No. 11 C 6183, 2012 WL 4120440, at *2 (N.D. Ill. Sep.19, 2012) (quoting *Harmon v. Gordon*, No. 10 C 1823, 2011 WL 290432, at *3 (N.D. Ill. Jan. 27, 2011)). Furthermore, even if the mere filing of charges could constitute abuse of process, neither the Neighbors nor Chief Caruso, Chief Cipkar, the Monee Officers, or Officer Drumm has the power to "file" charges as Plaintiffs allege. *See, e.g., People v. Perry*, 224 Ill. 2d 312, 339, 309 Ill. Dec. 330, 864 N.E. 2d. 196 (Ill. 2007) (explaining that it is the prosecutor who has the discretion to determine whether to charge an individual with a criminal offense and the nature of the offense to be charged.) As Plaintiffs' allegations do not include any legal process by a court, but rather allege, at most, an arrest initiated based on an ulterior motive, the Court dismisses Count XII without prejudice.

### B. Count XIV[3] - Willful, Reckless, and Wanton Conduct against Cipkar, Officer Drumm, the Monee Officers, and the Neighbors

In Count XIV, Plaintiffs allege that Chief Cipkar, Officer Drumm, and the Monee Officers participated in willful and wanton conduct by threatening to arrest Kenneth on five occasions when he was not violating any law. (SAC ¶ 150.) Plaintiffs also allege that these Defendants conspired to file false police reports, acted with an actual intent to harass, and exhibited a reckless disregard for the safety of others. (SAC ¶¶ 152-154.) According to Plaintiffs this constitutes "willful, reckless, and wanton conduct." (SAC at 43.) Notably, "[t]here is no separate and independent tort of willful and wanton conduct, but rather it is regarded as an aggravated form of negligence*." Egan Marine Corp. v. Exxonmobil Oil Corp*., No. 1-11-3477, 2013 WL 1294716, at *8 (Ill. App. Ct. Mar. 29, 2013) (citing *Krywin v.*

---

[3] Plaintiffs labeled this Count XV. This count, however, is the fourteenth count and there is another count properly labeled Count XV.

*Chi.Transit Auth.*, 238 Ill. 2d 215, 235, 938 N.E.2d 440 (Ill. 2010)). To state a claim for willful

and wanton misconduct, a plaintiff must allege that a defendant breached some duty with a

particularly malicious intent. *See Tucker v. Soy Capital Bank and Trust Co.*, 363 Ill. Dec. 23,

974 N.E.2d 820 (Ill. App. Ct. 2012) (citin*g OnTap Premium Quality Waters, Inc. v. Bank of N.

Ill., N.A.*, 262 Ill. App. 3d 254, 261, 199 Ill. Dec. 586, 634 N.E.2d 425 (Ill. App. Ct. 1994)).

 The Neighbors argue that Plaintiffs did not assert a claim against them in Count XIV

because Plaintiffs did not allege any duty which they owed the Plaintiffs. (Cateys' MTD at 11-

12; Bachards' MTD at 11-12.) Plaintiffs only allege a duty owed by Chief Cipkar, Officer

Drumm, and the Monee Officers. (SAC ¶ 148.) Indeed, the only allegations in Count XIV

regarding the Neighbors is that they "conspired and designed a scheme" to intentionally and

deliberately falsify police reports. (SAC ¶ 153.) Such conduct does not violate any type of

"duty" which one neighbor owes another. The Court, therefore, dismisses Count XIV as to the

Neighbors with prejudice.

 Plaintiffs' claims regarding conduct which occurred on May 11, 2009, July 11, 2009,

January 20, 2010, and July 10, 2010 are time-barred against Chief Cipkar, Officer Drumm, and

the Monee Officers because those cause of actions accrued more than one year prior to

Plaintiffs' filing of their initial Complaint. *See* 745 ILCS 10/8–101. The Court dismisses Count

XV as to those dates with prejudice.

 To prevail on their claim against the Monee Officers regarding July 9, 2011, Plaintiffs

must prove that (1) the Monee Officers owed a duty to them; (2) the Monee Officers breached

that duty; and (3) the breach was the proximate cause of their injuries. *Krywin*, 238 Ill. 2d 215.

Plaintiffs allege a vague duty to protect "the Plaintiffs' family and business associates from

violations of the United State Constitution and state law violations." (SAC ¶ 148.)  First, Plaintiffs cannot assert a claim for other people.  The only potential breach relevant, therefore, is any duty these Defendants owed to Plaintiffs.  Second, Plaintiffs do not state what specific portion of the Constitution or what specific state laws the Monee Officers allegedly failed to protect.  Although the Court must interpret Plaintiffs' *pro se* complaint liberally, even viewing the facts in the light most favorable to Plaintiffs, they have not alleged sufficient factual allegations to put these Defendants on notice of the claims alleged, particularly of the alleged duty owed.  Third, if Plaintiffs are merely alleging that these officers failed to sufficiently provide police protection or services, the officers are immune under the Illinois Tort Immunity Act.  *See* 745 ILCS 10/4-102.  The Court, therefore, dismisses Plaintiffs' July 9, 2011 allegations against Chief Cipkar, Officer Drumm, and the Monee Officers without prejudice.

### C.     Count XV - Malicious Prosecution against Cipkar, Officer Drumm, and the Monee Officers

In Count XV, Plaintiffs assert a malicious prosecution claim against Chief Cipkar, the Monee Officers, and Officer Drumm based on a series of arrests and attempted arrests.  (SAC ¶¶ 161-163.)  Under Illinois law, to prevail on a malicious prosecution claim a plaintiff must show: "(1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) there was an absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Hurlbert v. Charles*, 238 Ill. 2d 248, 255, 345 Ill. Dec. 68, 938 N.E.2d 507 (Ill. 2010) (citing *Swick v. Liautaud*, 169 Ill. 2d 504, 215 Ill. Dec. 98 N.E.2d 1238 (Ill. 1996)).

The Court first addresses the requirement that Plaintiffs must show that Defendants commenced a judicial proceeding which terminated in favor of Plaintiffs.  Plaintiffs allege that

Chief Cipkar, the Monee Officers, and Officer Drumm *threatened and attempted* to arrest

Kenneth on five dates ranging from May 11, 2009 to July 9, 2011. (SAC ¶ 161.) The Court

dismisses with prejudice these allegations regarding mere threatened or attempted arrests which

did not result in prosecutions – malicious or otherwise. The Court addresses the sufficiency of

the allegations relating to each of the three dates – June 26, 2010, July 17, 2011, and August 27 –

on which Chief Cipkar, the Monee Officers, and Officer Drumm arrested Kenneth. (SAC ¶¶

163-164.)

First, the prosecution stemming from Kenneth's July 17, 2011 arrest cannot form the

basis of a malicious prosecution claim because Plaintiffs concede that the proceedings resulting

from that arrest are currently on appeal. (SAC ¶ 25.) In other words, those proceedings are still

pending and have not been terminated in Kenneth's favor. *See, e.g., Ferguson v. City of Chi.*

213 Ill.2d 94, 99, 289 Ill. Dec. 679, 820 N.E.2d 455 (Ill. 2004) ("A cause of action for malicious

prosecution does not accrue until the criminal proceedings on which it is based has been

*terminated* in the plaintiff's favor." (emphasis added)). The Court, therefore, dismisses

Plaintiffs' July 17, 2011 allegations with prejudice.

Second, Plaintiffs allege that the Monee Officers and Officer Drumm arrested Kenneth

on June 26, 2010. (SAC ¶¶ 20, 164.) That arrest resulted in six citations, and Plaintiffs allege

that four of the six citations have been disposed of in Kenneth's favor. (*Id.* ¶¶ 163-164.)

Plaintiffs also allege that on August 27, 2011, Chief Cipkar, the Monee Officers, and Officer

Drumm arrested Kenneth, resulting in one citation that the prosecutor dismissed in Kenneth's

favor. (*Id.* ¶ 105.) The four charges from the June 26, 2010 arrest and the charges from the

August 27, 2011 arrest could support a claim of malicious prosecution since – taking as true

Plaintiffs' allegations at this stage – they have been terminated in Kenneth's favor.

Plaintiffs' allegations relating to Kenneth's June 26, 2010 arrest are time-barred, however, as all of Plaintiffs' allegations relate to the arrest, initiation of charges, and filing of false police reports, each of which occurred on or about June 26, 2010 – more than one year prior to Plaintiffs' filing their initial Complaint. *See* 745 ILCS 10/8–101. The Court, therefore, dismisses without prejudice Plaintiffs' allegations relating to Kenneth's June 26, 2010 arrest.

Regarding the August 27, 2011 arrest, Plaintiffs have alleged malice and lack of probable cause as required to support a malicious prosecution claim. (SAC ¶¶ 30-32, 46, 108, 162, 166-167.); *Aleman v. Village of Hanover Park*, 662 F.3d 897, 907 (7th Cir. 2011) ("Illinois law requires to show malicious prosecution not only lack of probable cause but also of malice) (internal quotation marks omitted). Indeed, although the Monee Defendants argue that Plaintiffs "have failed to allege any malice," Plaintiffs specifically state that Defendants acted with malice (SAC ¶ 167) and also have alleged that Defendants' actions are part of a racially discriminatory scheme to falsely arrest Plaintiffs (SAC ¶ 43). Construing the complaint liberally and in the light most favorable to Plaintiffs, they have sufficiently pled malice and lack of probable cause to survive a motion to dismiss. *See, e.g., Aleman*, 662 F.3d at 907 (stating that malice "means in this context that the officer who initiated the prosecution had any motive other than that of bringing a guilty party to justice.").

The Monee Defendants argue, however, that because the filing of a criminal complaint "breaks the chain of causation linking the police officers to the wrongful prosecution," "to maintain a malicious prosecution suit against arresting officers, Plaintiffs must allege more than lack of probable cause; they must allege that the officers committed some improper act after they

arrested Plaintiff." (Monee MTD at 16.) Here, reading Plaintiffs' Second Amended Complaint liberally, Plaintiffs have alleged such additional conduct. Specifically, Plaintiffs allege that Chief Cipkar, the Monee Officers, and Officer Drumm "filed and prosecuted the . . . charges" against Kenneth. (SAC ¶ 165.) Plaintiffs further allege that in connection with the June 26, 2010 arrest, Defendants Chief Caruso, the Monee Police officers, and Drumm "caused false charges to be brought against" Kenneth. (*Id.* ¶ 20.) Plaintiffs also allege throughout the Second Amended Complaint that these Defendants conspired to falsely arrest Kenneth through the falsification of police records, reports, and evidence. (*Id.* ¶¶ 33, 36, 38, 42-45, 57, 79-80.) Although prosecutors, not officers, file criminal charges, Plaintiffs have sufficiently alleged that Defendants took an "active part in instituting criminal proceedings," intentionally providing prosecutors false information. *See Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2011) ("Illinois law requires that, in order to commence or continue a criminal proceeding, the defendant must have initiated the criminal proceeding or his participation in it must have been of so active and positive a character as to amount to advice and cooperation.") (internal quotation marks omitted); *Reno v. City of Chicago*, No. 10 C 6114, 2012 WL 2368409, at *6 n. 2 (N.D. Ill. June 21, 2012); *Rodgers at* 348 ("[L]iability extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present."); *see also Padilla v. City of Chi.*, No. 06 C 5462, 2013 WL 1208567, at *16 (N.D. Ill. Mar. 26, 2013) ("If for instance a police officer makes a false statement to a prosecutor about a suspect, that officer can be found to have caused the accused's criminal prosecution"). Plaintiffs, therefore, have sufficiently pled a claim for malicious proseuction based on the August 27, 2011 arrest.

Finally, the Monee Defendants also argue that the Illinois Tort Immunity Act shields these Defendants from liability. (Monee MTD at 16.) Under the Tort Immunity Act, state officials who institute or prosecute a proceeding are immune from liability provided that the officials acted with probable cause and without malice. 745 ILCS 10/2-208. Since Plaintiffs have pled both malice and lack of probable cause, the Second Amended Complaint does not establish at this stage that these Defendants are immune. The Court, therefore, denies the Monee Defendants' motion to dismiss Count XV as to the charges stemming from Kenneth's August 27, 2011 arrest.

### D. Count XVI - Intentional Infliction of Emotional Distress against Cipkar, Officer Drumm, the Monee Officers, and the Neighbors

In Count XVI, Plaintiffs allege that Chief Cipkar, Officer Drumm, the Monee Officers, and the Neighbors intentionally inflicted emotional distress on Kenneth by threatening to arrest him and conspiring to oppress, harass, and incarcerate him by creating false police reports. (SAC ¶¶ 170-171.) To prevail on a common law intentional infliction of emotional distress claim, a plaintiff must establish that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citation omitted). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Id.* (citation omitted). Mere insults, indignities, threats, or annoyances do not qualify as extreme and outrageous conduct. *See Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 20–21, 180 Ill. Dec. 307, 607 N.E.2d 201 (Ill. 1992); *see also Duffy v. Haberkorn*, No. 1–11–0841, 2012 WL 6861596, at

*4 (Ill. App. Ct. Dec. 20, 2012).  Rather, "extreme and outrageous behavior requires conduct that goes beyond all possible bounds of decency, such that a reasonable person would hear the facts and be compelled to feelings of resentment and outrage."  *Duffy v. Orlan Brook Condo. Owners' Ass'n*, 367 Ill. Dec. 341, 351, 981 N.E.2d 1069 (Ill. App. Ct. 2012).  Also, a plaintiff must establish that the behavior was "so severe that no reasonable man could be expected to endure it."  *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 276, 278 Ill. Dec. 263, 798 N.E.2d 75 (Ill. 2003).

As a threshold matter, contrary to Defendants' argument to the contrary, Plaintiffs' Second Amended Complaint does not establish that these claims are time-barred.  In Illinois, the tort of intentional infliction of emotional distress can be considered a "continuing tort" which "accrues, and the statute of limitations begins to run, at the time the last injurious act occurs or the conduct is abated."  *Feltmeier,* 207 Ill. 2d at 285.  Plaintiffs allege an ongoing conspiracy and various allegedly tortious actions from May 11, 2009 through August 17, 2012.  Because the last injurious act allegedly occurred on August 17, 2012 – well within both the two years statute of limitations period for Illinois tort claims and the on year statute of limitations applicable to the officers through under the Illinois Tort Immunity Act – Plaintiffs have not pled themselves out of court.  Whether these allegations are a "series of discrete acts" rather than a continuing act, and therefore the "continuing violation rule" would not apply to save Plaintiffs' earlier acts from the statute of limitations, is not a question for the motion to dismiss stage.  *Id.*

The Neighbors argue that Plaintiffs have not sufficiently alleged any conduct by them that is so outrageous and extreme as to warrant liability.  (Cateys' MTD at 12-13; Bachands' MTD at 12-13.)  As the Neighbors note, Plaintiffs' only factual allegations regarding the Neighbors is that they allegedly called the police and made false allegations against Plaintiffs to

the police.  Although this action may be tortious or harassment, it is not so beyond all bounds of

decency to constitute intentional infliction of emotional distress.  Indeed,

> Illinois courts have consistently held that the conduct alleged must be particularly
> egregious; it has not been enough that the defendant has acted with an intent which is
> tortious or even criminal, or that he has intended to inflict emotional distress, or even that
> his conduct has been characterized by 'malice' or a degree of aggravation which would
> entitle plaintiff to punitive damages for another tort.

*Michael v. Bell,* No. 11-cv-4484, 2012 WL 3307222, at *5 (N.D. Ill. Aug. 13, 2012) (citing

*Public Fin. Corp. v. Davis,* 66 Ill. 2d 85, 89–90, 4 Ill. Dec. 652, 360 N.E.2d 765 (Ill. 1976)).

Plaintiffs' conclusory allegations that the Neighbors acted so outrageously and extremely are not

sufficient. The Court, therefore, dismisses Count XVI without prejudice against the Neighbors.

The Monee Defendants also argue that Plaintiffs' "bare bone allegations fail to establish

above a speculative level that any action on the part of any Monee Defendant in threatening to

arrest a Plaintiff was extreme and outrageous."  (Monee MTD at 18.)  In addition to the

allegations Plaintiffs make about the Neighbors, they also allege that Chief Cipkar, Officer

Drumm, and the Monee Officers threatened to arrest Kenneth, though did not arrest him because

he confined himself within his home.  (SAC ¶ 170.)  These mere threats do not rise to the level

of extreme or outrageous conduct that warrants liability.  *See, e.g., Mnyofu v. Board of Educ. of

Rich Tp. High School Dist. 227,*  832 F. Supp. 2d 940, 949-50 (N.D. Ill. 2011) (finding that

threats by the school board to have plaintiff arrested did not rise to the level of extreme or

outrageous conduct, even though the board was in a position of authority); *Public Fin. Corp. v.

Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (finding that defendant bill collector's numerous phone

calls, abusive and threatening language, and repeated threats of arrest did not constitute extreme

and outrageous conduct).  The Court dismisses Count XVI without prejudice.

**E.      Counts XVII and XVIII - Assault and Battery against Caruso, Officer Drumm, and the Monee Officers**

In Counts XVII and XVIII, Plaintiffs allege assault and battery against Chief Caruso, Officer Drumm, and the Monee Officers stemming from a June 26, 2010 incident between Kenneth and Officer Drumm.  (SAC ¶186).  Specifically, Plaintiffs allege that Officer Drumm used excessive force, such as holding a gun to Kenneth's head, "excessively chok[ing] [Kenneth] around his neck," and slamming Kenneth on the ground "face [f]irst."  *Id*.  Under Illinois tort law, assault involves intentional conduct that places the plaintiff in reasonable apprehension of an imminent battery.  *Urban W. Byron, L.P. v. Peskoff*, 1-09-2962, 2011 WL 9933750 at *2 (Ill. App. Ct. Mar. 11, 2011); *McNeil v. Carter,* 318 Ill. App. 3d 939, 944, 252 Ill. Dec. 413, 417, 742 N.E.2d 1277, 1281 (Ill. 2001).  A person commits civil battery if (1) he or she acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (2) a harmful contact with the person of the other directly or indirectly results."  *Bakes v. St. Alexius Med. Ctr.,* 2011 IL App 101646 at *22, 352 Ill. Dec. 902, 955 N.E.2d 78 (Ill. App. Ct. 2011), citing *Restatement (Second) of Torts* § 13 (1965); s*ee also Napoles v. Johnson*, 12 C 10220, 2013 WL 1943304 at *5 (N.D. Ill. May 8, 2013).  These counts fail for two reasons.

 First, Plaintiffs have only alleged facts regarding conduct by Officer Drumm and not by any other named Defendants.  As such, Plaintiffs have failed to state a claim for assault or battery against Chief Caruso and the Monee Officers.

Second, the applicable statute of limitations bars the claims against Officer Drumm.  Under Illinois law, a plaintiff may sue a defendant for assault and battery within two years of the occurrence of the alleged injury.  735 ILCS §5/13-202.  Here, however, because Officer Drumm

is a public employee, the plaintiff needed to bring the suit against Officer Drumm within one year of the occurrence of the alleged assault or battery. 745 ILCS §10/8-101; *see also Nesbitt v. City of Champaign*, 34 Fed.App'x 226 (7th Cir. 2002) (holding that the district court was correct in dismissing plaintiff's state law claims against police officers, including for assault and battery, because the one-year statute of limitations had run); *Grzanecki v. Cook Cnty. Sheriffs Police Dep't,* 10 C 07345, 2011 WL 3610087 at *2 (N.D. Ill. Aug. 16, 2011) (dismissing plaintiff's assault and battery claims against police officers because the one-year statute of limitations had run). Plaintiffs' assault and battery claims – which accrued on June 26, 2010 – occurred outside of the applicable one-year statute of limitations period since Plaintiffs filed their initial Complaint on June 25, 2012. *See id.; Huerta v. Vill. of Carol Stream*, 09 C 1492, 2010 WL 2330361 at *2 (N.D. Ill. June 9, 2010) (finding that, under the terms of the Illinois Torts Immunity Act, a cause of action for assault or battery accrues on the date that the injury occurred). The Court, therefore, dismisses the entirety of Counts XVII and XVIII with prejudice.

### F.    Count XIX – False Light and Defamation against Cipkar, Officer Drumm, the Monee Officers, and the Neighbors

In Count XIX, Plaintiffs allege false light and defamation against Chief Cipkar, Officer Drumm, the Monee Officers, and the Neighbors. Specifically, Plaintiffs allege that these Defendants forwarded an arrest picture of Kenneth to a third party "for the purposes of character defamation." (SAC ¶ 196.) To state a claim for false light under Illinois law, a plaintiff must show that (1) he was placed in a false light before the public as a result of the defendants' action; (2) the false light in which the plaintiffs were placed would be highly offensive to a reasonable person; and (3) the defendants acted with actual malice, that is, with knowledge that the

44

statements were false or with reckless disregard for whether the statements were true or false.

*See Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 17-18, 180 Ill. Dec. 307, 315-316, 607 N.E.2d

201, 209-10 (Ill. 1992); *see also Raveling v. HarperCollins Publishers Inc.*, 04-2963, 2005 WL

900232 (7th Cir. Mar. 4, 2005); *Butler v. Discovery Commc'ns, LLC*, 12 CV 6719, 2013 WL

1942184 (N.D. Ill. May 9, 2013).  A claim for false light fails if the plaintiff fails to allege a

specific false statement.  *See Kirchner v. Greene*, 294 Ill. App. 3d 672, 683, 229 Ill. Dec. 171,

180, 691 N.E.2d 107, 116 (Ill. App. Ct. 1998);  *Silk v. City of Chi.*, 95 C 0143, 1996 WL 312074

(N.D. Ill. Jun. 7, 1996).  Similarly, to state a claim for defamation under Illinois law, a plaintiff

must show (1) the defendant made a false statement about the plaintiff, (2) that the defendant

made an unprivileged publication of that statement to a third party, and (3) that this publication

caused damages.  *Green v. Rogers*, 234 Ill. 2d 478, 491, 334 Ill. Dec. 624, 633, 917 N.E.2d 450,

459 (Ill. 2009); *see also Coghlan v. Beck*, 984 N.E.2d 132, 145, 368 Ill. Dec. 407 (Ill. App. Ct.

2013); *Johnson v. Schnuck Markets, Inc.*, 495 F. App'x. 733, 736 (7th Cir. 2012).

Here, Plaintiffs fail to state a claim for either false light or defamation, because, even

viewing the facts in the light most favorable to Plaintiffs, they have not alleged that Defendants

made any false statements.  Indeed, even though Plaintiffs allege that Monee police officers

arrested Kenneth based on false police reports, his arrest did in fact occur.  The photograph of

his arrest, therefore, cannot constitute a "false" statement.  *See Imperial Apparel, Ltd. v.*

*Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 402, 317 Ill. Dec. 855, 882 N.E.2d 1011 (Ill.

2008) ("a statement is not actionable unless it is factual and false."); *Phillips v. Quality Terminal*

*Servs., LLC*, 855 F. Supp. 2d 764, 786 (N.D. Ill. 2012) (under Illinois law, "[t]ruth is an absolute

defense to defamation"), quoting *Hnilica v. Rizza Chevrolet, Inc.*, 384 Ill. App. 3d 94, 97, 323

Ill. Dec. 454, 457, 893 N.E.2d 928, 931 (Ill. App. Ct. 2008). Having alleged no additional false

statement of fact made by any Defendant, Plaintiffs have not stated a claim for either false light

or defamation. Plaintiffs also do not identify the third party to whom Defendants allegedly sent

the picture to establish the publication element of defamation. Accordingly, the Court dismisses

Count XIX with prejudice.

### G. Count XX - Fraud against Cipkar, Officer Drumm, the Monee Officers, and the Neighbors

In Count XX, Plaintiffs allege fraud against Chief Cipkar, Officer Drumm, the Monee

Officers, and the Neighbors. Specifically, Plaintiffs allege that these Defendants made false

statements to a state prosecutor, filed false police reports, and made repeated attempts to

"wrongfully arrest" Plaintiffs. (SAC ¶¶ 201-203). Under Illinois law, to prevail on a claim of

common law fraud, the plaintiff must prove: (1) the defendants made a false statement of a

material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's

intent that the statement induce plaintiff to act; (4) the plaintiff's reliance upon the truth of the

statement; and (5) the plaintiff suffered damages resulting from reliance on the statement. *See*

*Doe v. Dilling,* 228 Ill. 2d 324, 342-43, 320 Ill. Dec. 807, 888 N.E.2d 24 (Ill. 2008); *see also*

*Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 881-82 (7th Cir. 2005); *Susan Patterson Interiors,*

*Inc. v. Tobias*, No. 11 C 221, 2012 WL 4578694, at *20 (N.D. Ill. Oct. 1, 2012).

The Monee Defendants and the Neighbors argue that Plaintiffs have not sufficiently

stated a claim for fraud with the particularly required by Rule 9(b). (Monee MTD at 20; R. 64,

Bachands' MTD at 14; R. 66, Cateys' MTD at 14); *see Pirelli Armstrong Tire Corp. Retiree*

*Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 446 (7th Cir. 2011); *see also* Fed. R. Civ. P.

9(b). The Court agrees. Rule 9(b)'s requirement "ordinarily requires describing the 'who, what,

when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted); *see also Pirelli,* 631 F.3d at 441–42.

As a threshold matter, Plaintiffs fail to allege any fraudulent statements made to them or upon which they relied. Instead, Plaintiffs allege that the Defendants made various false statements to a prosecutor "for the purposes of instituting a false arrest and [to] incarcerate Plaintiff]," including the creation of false police reports. (SAC ¶¶ 201, 202.) Plaintiffs' allegations, therefore, state that prosecutors – not Plaintiffs – relied upon the allegedly fraudulent statements. As a result, Plaintiffs have not stated a claim for fraud.

Furthermore, Plaintiffs' allegations do not meet the higher standards imposed by Rule 9(b). Plaintiffs merely provide a list of statements, with dates, but do not explain which Defendant made each statement or to whom he or she made it. Fed. R. Civ. P. 9(b) (the pleading "must state with particularity the circumstances constituting fraud or mistake"); *see also Tubalinal v. BAC Home Loans Servicing, L.P.,* 11 C 04104, 2012 WL 2929959 at *7 (N.D. Ill. July 18, 2012) (stating that Rule 9(b) requires the plaintiff to identify the speaker of the alleged fraudulent statement). Plaintiffs, therefore, have not sufficiently have not stated a claim for fraud. Accordingly, the Court dismisses Count XX without prejudice.

## H.      Count XXI - Respondeat Superior against Village of Monee

Plaintiffs next allege that the Village of Monee is liable for the actions of its agents – Chief Caruso, Chief Cipkar, Officer Drumm, and the Monee Officers – for their state-law violations under the theory of *respondeat superior.* (SAC ¶ 207.) *Respondeat superior* is a theory of derivative liability. *See Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill. App. 3d 1051,

1060, 349 Ill. Dec. 269, 946 N.E.2d 463, 473 (Ill. 2011) (citing *Moy v. County of Cook*, 159

Ill.2d 519, 524, 203 Ill. Dec. 776, 640 N.E.2d 926 (Ill. 1994)).  The Monee Defendants dispute

this claim based on their contention that none of the Village's agents are liable for any claim.

(Monee MTD at 21.)  As discussed above, however, the Court has not dismissed all of Plaintiffs'

claims against all of the officers.  The Court, therefore, denies the Monee Defendants' motion to

dismiss as to Count XXI.  Plaintiffs, however, may not obtain punitive damages from the Village

of Monee.  *See* 745 ILCS 10/2–102 (a local public entity is not liable to pay punitive damages in

any action brought directly or indirectly against it by an injured party or third party).

### I.      Count XXII - Indemnification against Caruso, Cipkar, Officer Drumm, and the Monee Officers

The title of Plaintiffs' Count XXII claim states that he seeks indemnification from Chief

Caruso, Chief Cipkar, Officer Drumm, and the Monee Officers – not the Village of Monee.  His

prayer for relief for this count seeks a judgment against these Defendants as well as the Trustees

and the Neighbors.  Plaintiffs do not seek judgment against the Village of Monee.  Plaintiffs,

however, state that the Village of Monee is liable for any damages "arising from the actions of

the Defendant-Officers" pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102.  (SAC ¶

212.)  Under the Tort Immunity Act:

> [a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article.

745 ILCS 10/9-102.  Plaintiffs' allegations against Chief Caruso, Chief Cipkar, Officer Drumm,

and the Monee Officers state that they committed the alleged actions while acting within the

scope of their employment.  The Village of Monee may, therefore, be liable if Plaintiffs prevail

on their claims against the officers and establish that the officers acted in the scope of their

employment.  For clarity, because Plaintiffs did not assert Count XXII against the Village of

Monee, the Court dismisses Count XXII without prejudice.

### J.     Count XXIV[4] - False Imprisonment against Caruso, Cipkar, Officer Drumm, and the Monee Officers

In Count XXIV, Plaintiffs allege that Chief Caruso, Chief Cipkar, Officer Drumm, and

the Monee Officers falsely imprisoned Kenneth by threatening to arrest him, thereby forcing him

– at the advice of counsel – to confine himself inside his home until they left his property.  (SAC

¶¶ 219-231.)  Specifically, Plaintiffs allege that Officer Blake positioned himself outside of

Kenneth's patio door with his hand on his gun.  (SAC ¶ 222.)  Plaintiffs also allege that other

officers positioned themselves at Kenneth's front door with their guns removed from their

holsters.  (SAC ¶ 223.)  Plaintiffs' claims that Defendants falsely imprisoned Kenneth on July

11, 2009 and July 10, 2010 are time-barred because those actions accrued more than a year

before Plaintiffs filed their initial Complaint.  *See* 745 ILCS 10/8–101. ("Actions for damages

for an injury to the person, or for false imprisonment . . . shall be commenced within 2 years next

after the cause of action accrued").  The Court, therefore, dismisses the July 11, 2009 and July

10, 2010 claims with prejudice.  For the reasons explained below, however, Plaintiffs' remaining

allegations regarding July 9, 2011 sufficiently state a claim of false imprisonment.

"False imprisonment is the unreasonable restraint of an individual's liberty, against his

will, caused or procured by the defendant."  *Poris v. Lake Holiday Prop. Owners Ass'n,* , 368 Ill.

Dec. 189, 203, 983 N.E.2d 993 (Ill. 2013).  To prevail on a cause of action for false

---

[4] Plaintiffs labeled this Count XVX.  It is the 24th count in the Second Amended
Complaint.

imprisonment, a plaintiff must show that he was restrained or arrested by the defendant, and that the defendant acted without reasonable grounds to believe that an offense was committed by the plaintiff. (*Id*.) Plaintiffs allege that the Officers threatened arrest Kenneth without probable cause or a warrant. (SAC ¶ 220.)

The Monee Defendants argue that Plaintiffs' false imprisonment claim fails because they do not allege that any of the officers restrained Kenneth. (Monee MTD at 22.) They further argue that the officers did not compel him to stay in his home; "rather, he voluntarily remained in his home to evade arrest." (*Id*.) These arguments fail, however, because "false imprisonment only requires that the plaintiff's liberty be restrained, not necessarily that the plaintiff actually be placed under arrest." *Carey v. K-Way, Inc*., 312 Ill. App. 3d 666, 669, 245 Ill. Dec. 661, 728 N.E.2d 743 (Ill. App. Ct. 2000). The key here is that a reasonable person in Kenneth's position would have understood the situation to constitute a restraint on his freedom of movement to the degree which the law associates with an arrest. *Id*. ("The standard for arrest is whether a reasonable person in the plaintiff's place, innocent of any crime, would think that he or she was free to leave."); *see also Abbott*, 705 F.3d at 714. Indeed, Kenneth was not simply free to choose to leave his house to run errands or visit a neighbor. According to the allegations, if he left, he would have faced multiple police officers holding guns, and would have been formally arrested – falsely, and without probable cause, according to Plaintiffs. (*See, e.g.,* SAC ¶¶ 220, 222-24.) Plaintiffs have, therefore, sufficiently alleged that the officers compelled Kenneth "to remain where he [] did not wish to remain." *Carey*, 312 Ill. App. 3d at 670.

The Monee Defendants cite *Hanna v. Marshall Field & Co.*, 279 Ill. App. 3d 784, 793, 216 Ill. Dec. 283, 665 N.E.2d 343 (Ill. App. Ct. 1996), for the proposition that voluntary

confinement nullifies a claim of false imprisonment. (Monee MTD at 21-22.) The circumstances in *Hanna,* however, differ significantly from the facts alleged here. In *Hanna*, an employee alleged that her employer's personnel falsely imprisoned her when they questioned her in a room, after refusing multiple requests to leave or to speak to an attorney. 279 Ill. App. 3d at 792. The court concluded that the "restraint that results merely from a plaintiff's fear of losing his job or belief that he would be fired immediately if he left the room is insufficient as a matter of law to make out a claim of false imprisonment." *Id*. at 793. Although the plaintiff in *Hanna* surely felt stuck between a proverbial rock and a hard place, she did not face the authority and control of police officers, whose restraint of an individual to the point where he does not feel free to leave under certain circumstances constitutes an arrest under the law. *See, e.g., People v. Surles,* 963 N.E.2d 957, 963, 357 Ill. Dec. 559, 565, 963 N.E.2d 957 (Ill. App. Ct. 2011) citing (*People v. Lopez*, 229 Ill.2d 322, 346, 323 Ill. Dec. 55, 892 N.E.2d 1047 (Ill. 2008)). Viewing the facts in the light most favorable to Plaintiffs, therefore, Plaintiffs have sufficiently stated a claim for false imprisonment of Kenneth on July 9, 2011.

## V.    Claims against Officers in their Official Capacities

According to Plaintiffs, they are suing Chief Cipkar, Chief Caruso, Officer Drumm, and the Monee Officers in both their individual and official capacities. (SAC ¶¶ 7-10.) "[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *Monell*, 436 U.S. at 690 n. 55.) Accordingly, Plaintiffs' claims against these agents of the Village of Monee in their official capacities amount to claims against the Village. As Plaintiffs already have named the

Village of Monee as a Defendant, Plaintiffs' claims against Chief Cipkar, Chief Caruso, Officer Drumm, and the Monee Officers in their official capacities are redundant and unnecessary. *See Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008) ("[a]n official capacity suit is tantamount to a claim against the government entity itself.") (citation omitted). The Court, therefore, dismisses all claims against Chief Cipkar, Chief Caruso, Officer Drumm, and the Monee Officers in their official capacities. The Court also strikes any prayer for relief to the extent that it seeks punitive damages from the Village of Monee – via official capacity claims against its agents. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) (municipalities are not subject to punitive damages in suits under 42 U.S.C. § 1983); *Robinson v. City of Harvey, Ill.*, 617 F.3d 915, 916 (7th Cir. 2010) (same); *Prate v. Village of Downers Grove*, No. 11 CV 3656, 2011 WL 5374100, at * 6 (N.D. Ill. Nov. 7, 2011) (striking punitive damages as to the village defendant).

## VI.     Attorney's Fees

On a final note, Plaintiffs seek compensatory damages, punitive damages, and attorney's fees pursuant. Because *pro se* litigants who are not lawyers cannot recover attorney's fees under Section 1988, *see Smith v. De Bartoli,* 769 F.2d 451, 453 (7th Cir. 1985), the Court strikes Plaintffs' request for attorney's fees from the Second Amended Complaint.

**CONCLUSION**

Defendants' motions are granted in part and denied in part as detailed in this Opinion.

Plaintiffs have leave to file a Third Amended Complaint consistent with this Opinion on or

before July 26, 2013.

**DATED: July 1, 2013**

**ENTERED**

**AMY J. ST EVE**
**United States District Court Judge**