**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KENNETH N. THOMPSON, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VILLAGE OF MONEE, RUSSEL CARUSO, | ) | No. 12 CV 5020 |
| JOHN CIPKAR, ANTHONY LAZZARONI, | ) | |
| CHAD BLAKE, MICHAEL DRUMM, | ) | |
| STEPHEN CRESCENTI, BRENT CASH, | ) | |
| JOHN FOWLER, and JAMES JONES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In this civil rights action, Plaintiff Kenneth N. Thompson asserts Section 1983 claims against the Village of Monee and several of its current and former police officers for harassment, racial discrimination, and various other alleged misconduct. Defendants have move for summary judgment on all claims, arguing that Plaintiff failed to disclose his claims as assets in two bankruptcy proceedings and, as a result, he is judicially estopped from pursuing those claims in this proceeding. (*See* R. 134, Defs. Mot.) For the following reasons, the Court denies Defendants' motion in large part. The Court, however, grants Defendants' motion to the extent Plaintiff's claims rest on events that occurred before May 12, 2010 when Plaintiff filed his Chapter 7 bankruptcy proceeding.

**BACKGROUND**

I.     **Northern District of Illinois Local Rule 56.1**

Northern District of Illinois Local Rule 56.1"is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). The nonmoving party must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing L.R. 56.1(b)(3)(B)). The nonmoving party also may submit a separate statement of additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon to support those facts. *See* L.R. 56.1(b)(3)(C); *see also Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008). The parties have complied with their obligations under Local Rule 56.1, and the relevant facts, with one exception,[1] are not in dispute.

II.    **Relevant Facts**

   A.     **Background on Plaintiff's Civil Rights Claims**

Plaintiff alleges that police officers for the Village of Monee (the "Village") began harassing him in 2007. (*See* R. 120, Fourth Am. Compl. ¶ 10.)[2] As part of the ongoing pattern

---

[1] *See* note 4, *infra.*

[2] For purposes of this summary judgment motion, the Court cites the Fourth Amended Complaint to show the basis of Plaintiff's claims, not to establish the truth of Plaintiff's allegations. The Court need not (and

2

of harassment, Village police officers issued Plaintiff tickets and citations for excessive noise, parking illegally, and other nuisance violations that Plaintiff contends never occurred. (*Id.* ¶¶ 10-11.) In 2008, Village police officers began writing fewer tickets, but they began making frequent visits to Plaintiff's home investigating false complaints made by Plaintiff's neighbor. (*Id.* ¶¶ 12-13.) In 2009 and 2010, police officers drove by or sat in a parked squad car near Plaintiff's home almost daily. (*Id.* ¶¶ 16-17, 22.) Plaintiff also alleges that police officers threatened to arrest him without cause on several occasions in 2009. (*Id.* ¶ 19.)

In addition to this pattern of general harassment, which Plaintiff alleges continued until June 2013, Plaintiff complains of several specific instances of harassment during 2010 and 2011. First, Plaintiff asserts that Village police officers arrested him using excessive force and conducted an unreasonable search and seizure of his property on June 26, 2010. (*See id.* ¶¶ 23-31, 65-69, 72-77.) Second, Plaintiff alleges that Village police officers showed up at his home during a business event Plaintiff was hosting, threatened to arrest him, and attempted to enter his home without a warrant on July 10, 2010. (*See id.* ¶ 34.) Third, Plaintiff alleges that officers threatened to arrest him on July 25, 2010, August 15, 2010, and July 9, 2011 because of unwarranted noise complaints made by Plaintiff's neighbor. (*See id.* ¶¶ 35, 38, 40-41.) Plaintiff contends that after he retreated into his house to avoid arrest during the July 9, 2011 incident, an officer stood by Plaintiff's front door with his gun out of the holster and in his hand, attempting to peer into Plaintiff's home through the glass door. (*Id.* ¶ 41.) Finally, Plaintiff alleges that, on August 28, 2011, Village police officers falsely arrested him after taking a guest staying at Plaintiff's home into custody and coercing her into making false charges of domestic battery against Plaintiff. (*See id.* ¶¶ 42-47.)

---

does not) make any comment on the truth of Plaintiff's allegations or the merits of his claims to decide this motion.

Plaintiff complained about police officers harassing him to Police Chief Caruso on at least two occasions. On July 2, 2010, Plaintiff met with Chief Caruso at the Village police station to discuss the officers' harassment of him, including the arrest and allegedly unlawful search and seizure on June 26, 2010 (*see id.* ¶¶ 32-33), and in August 2010, Plaintiff mailed a complaint letter to Chief Caruso complaining about various events, including the June 26, 2010 and July 10, 2010 incidents. (*See id.* ¶ 36 & Ex. 3.) Additionally, some time prior to August 2010, Plaintiff filed a complaint about the harassment with the FBI and the Department of Justice, Civil & Criminal Rights Division. (*See* R. 137, Defs. L.R. 56.1 Stmt. ¶ 9.)[3] Plaintiff also had conferred with an attorney about the June 26, 2010 arrest "to review the history and give [Plaintiff] some feedback on what to do." (*See* R. 137-1, Pl. Dep. at 242-43.) Plaintiff, however, denies that he retained an attorney to pursue his civil rights claims against the Village or was contemplating filing this suit prior to August 2010.[4] (*See* R. 142, Pl. Resp. to Defs. L.R. 56.1 Stmt. ¶ 9; *see also* Pl. Dep. at 241-43.)

Plaintiff eventually filed this civil rights action against the Village and several police officers on June 25, 2013. (*See* R. 1.) Plaintiff asserts Section 1983 claims against the Village and the Individual Defendants for ongoing harassment and racial discrimination, excessive force and unreasonable search and seizure during the June 26, 2010 arrest, unreasonable seizure by

---

[3] Citations to the parties' Local Rule 56.1 Statements refer collectively to the cited statement of fact and the opposing party's response. For clarity, the Court uses this form of citation only when the fact at issue is undisputed.

[4] Plaintiff's letter to Chief Caruso in August 2010 stated that Plaintiff had "[r]etained Attorney Walter Peter Maksym Jr. to represent [him] in a 42 U.S.C. 1983 Cause of Actions [sic] against the Village of Monee and certain employees of the Village." (*See* Fourth Am. Compl. Ex. 3, Letter to Caruso at 1.) Plaintiff testified in his deposition, however, that he had not retained an attorney to represent him in a civil rights action at that time, and he had simply consulted with Maksym about the June 26, 2010 arrest "just to review the history and give [Plaintiff] some feedback on what to do." (*See* Pl. Dep. at 242-43.) For purposes of Defendants' summary judgment motion, the Court resolves this factual dispute in Plaintiff's favor, accepting as true his testimony that he had not retained Maksym to file a civil rights suit and was not contemplating filing the present suit in 2010.

threat of false arrest with respect to the July 10, 2010 and July 9, 2011 incidents, and violation of his Fourth and Fourteenth Amendment rights with respect to the false arrest for domestic battery on August 28, 2011.

### B. Plaintiff's Bankruptcy Proceedings

#### 1. Chapter 7 Proceeding in 2010

On May 12, 2010, Plaintiff filed a petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, Case No. 10-21662. (*See* Pl. L.R. 56.1 Stmt. ¶ 12.) Schedule B of the petition required Plaintiff to "list all personal property of the debtor of whatever kind." (*See* R. 137-2, 5/12/10 Petition at Sch. B, p. 1.) In the section requiring the debtor to disclose "[o]ther contingent and unliquidated claims of every nature," Plaintiff marked "None." (*Id.* at Sch. B, p. 2.) Plaintiff did not disclose his potential civil rights claims against Defendants anywhere in his petition. (*See* Pl. L.R. 56.1 Stmt. ¶ 13.)

On August 3, 2010, the trustee of Plaintiff's estate filed a no asset report stating that "there is no property available for distribution from the estate over and above that exempted by law." (*See* Pl. L.R. 56.1 Stmt. ¶ 14); *see also In re Estate of Thompson,* No. 10-21662 (N.D. Ill. Bankr. 2010), at R. 21, 8/3/10 Minute Order. The trustee noted that the total claims discharged without payment amounted to $630,923.42. *See In re Estate of Thompson,* No. 10-21662 (N.D. Ill. Bankr. 2010), at R. 21, 8/3/10 Minute Order. Plaintiff's counsel amended Schedules A, D, and E of Plaintiff's bankruptcy petition on Plaintiff's behalf. (*See* Pl. L.R. 56.1 Stmt. ¶ 15.) Plaintiff, however, never amended Schedule B of his petition. (*See id.*) The bankruptcy court granted Plaintiff a Chapter 7 discharge on November 24, 2010 (*see id.* ¶ 16), and closed the case on November 29, 2010. *See In re Estate of Thompson,* No. 10-21662 (N.D. Ill. Bankr. 2010), at R. 42, 11/29/10 Minute Order.

5

## 2. Chapter 13 Proceedings in 2013

On April 24, 2013, Plaintiff filed a petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, Case No. 13-17158. (*See id.* ¶ 17.) Plaintiff filed the required schedules in support of his bankruptcy petition on May 9, 2013. (*See id.* ¶ 18.) Plaintiff did not list his pending claims against Defendants as an asset on Schedule B. (*See id.* ¶ 19.) He did, however, disclose the present suit in the "Statement of Financial Affairs" he filed on the same day. (*See* Defs. L.R. 56.1 Stmt. ¶¶ 12-15.) Under the subsection instructing the debtor to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case," Plaintiff provided the following information:

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency Location | Status or Disposition |
|---|---|---|---|
| "Kenneth Thompson vs Monee ERL 12 CV 05020" | "Civil Rights Lawsuit" | "Northern District of Illinois 219 S Dearborn Chicago IL" | "Motion Call" |

(*See id.* ¶¶ 14-15; *see also* R. 141-2, Pl. Stmt. of Fin. Affairs at 2.)

Plaintiff admits that he filed for bankruptcy in 2013 for the protection of the automatic stay to prevent the mortgagee from foreclosing on his home and selling the property at a Sheriff's sale. (*See* Pl. L.R. 56.1 Stmt. ¶ 20.) The mortgagee, however, moved for relief from the stay to allow the Circuit Court of Will County to confirm the sale of Plaintiff's property, and the bankruptcy court granted the mortgagee's motion. (*See id.* ¶ 21.) The bankruptcy court ultimately denied Plaintiff a discharge on June 7, 2013 pursuant to an objection filed by the trustee. (*See id.* ¶ 22.) On June 13, 2013, Plaintiff appealed the bankruptcy court's decision to grant Plaintiff's mortgagee relief from the stay to the United States District Court for the Northern District of Illinois, Case No. 13-cv-4775 (*see id.* ¶ 23), but the parties settled the case

before the district court issued a decision.  (*See id.* ¶ 24.)  In the end, the Circuit Court of Will County never confirmed the sale of Plaintiff's property.  (*See id.* ¶ 25.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining summary judgment motions, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion.'"  *Scott v. Harris,* 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)).  The party seeking summary judgment bears the burden of establishing that there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once the moving party meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

Defendants argue that Plaintiff is judicially estopped from asserting claims against them in this action because Plaintiff failed to disclose those claims as assets in Schedule B of his 2010 and 2013 bankruptcy petitions.  Judicial estoppel is an equitable doctrine that "prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter."  *Wells v. Coker,* 707 F.3d 756, 760 (7th Cir. 2013); *see also In re Knight-Celotex, LLC,* 695 F.3d 714, 721 (7th Cir. 2012).  The purpose of the doctrine is "to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *New Hampshire v. Maine,* 532 U.S. 742,

749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (internal quotations marks and citations omitted); *see also Cannon-Stokes v. Potter,* 453 F.3d 446, 448 (7th Cir. 2006) ("By making [litigants] choose one position irrevocably, the doctrine of judicial estoppel raises the cost of lying." (quoting *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1428 (7th Cir. 1993)). Although the standard for invoking judicial estoppel is "not reducible to any general formulation of principle," *see In re Knight-Celotex, LLC,* 695 F.3d at 721 (quoting *New Hampshire v. Maine,* 532 U.S. at 749), courts typically examine three factors in determining whether judicial estoppel applies: "(i) whether the party's positions in the two litigations are clearly inconsistent; (ii) whether the party successfully persuaded a court to accept its earlier position; and (iii) whether the party would derive an unfair advantage if not judicially estopped." *Wells,* 707 F.3d at 760 (citing *New Hampshire v. Maine,* 532 U.S. at 749).

In the bankruptcy context, judicial estoppel bars a debtor "who denies owning an asset, including a chose in action or other legal claim, [from realizing] on that concealed asset after the bankruptcy ends." *Cannon-Stokes,* 453 F.3d at 448; *see also Spaine v. Community Contacts, Inc.,* 756 F.3d 542 (7th Cir. 2014) (judicial estoppel applies "when a debtor deliberately conceals a contingent or unliquidated claim during bankruptcy proceedings and then later seeks to profit from that claim after obtaining a discharge of her debts"); *Hernandez v. Forest Preserve Dist. of Cook Cnty., Ill.,* No. 08-cv-5731, 2010 WL 1292499, at *3 (N.D. Ill. Mar. 29, 2010) ("[J]udicial estoppel blocks a debtor from pursuing a claim for his own benefit that he failed to disclose in his bankruptcy proceeding."). In *Cannon-Stokes,* for example, the plaintiff filed a Chapter 7 bankruptcy petition asserting that she had no assets at the same time that she was pursuing an administrative claim against her employer. *See* 453 F.3d at 448. In her petition for bankruptcy, the plaintiff "expressly denied that she had any valuable legal claims ('contingent and

8

unliquidated claims of every nature', the schedule calls them, leaving no room for quibbles)."
*Id.* Relying on the plaintiff's representation, the bankruptcy court discharged her unsecured debts of approximately $98,000. After the bankruptcy ended, the plaintiff then filed suit against her employer. The Seventh Circuit held that judicial estoppel barred the plaintiff's claim against her employer because she had failed to disclose the claim as an asset in the bankruptcy proceeding. *Id.* at 448-49. As the Seventh Circuit explained:

> Cannon-Stokes had represented that she had no claim against [her employer] (or anyone else); that representation had prevailed; she had obtained a valuable benefit in the discharge of her debts. Now she wants to assert the opposite in order to win a second time. That satisfies the requirements of judicial estoppel.

*Id.* at 447.

Defendants argue that *Cannon-Stokes* is directly on point here because, like the plaintiff in *Cannon-Stokes,* Plaintiff did not disclose his claims against Defendants in Schedule B of his 2010 and 2013 bankruptcy petitions, thus expressly denying that he had any valuable legal claims. As explained below, however, Defendants overlook two important distinctions between *Cannon-Stokes* and the present case.

**I.     2010 Bankruptcy Proceeding**

First, with respect to the 2010 bankruptcy proceeding, nearly all of the events giving rise to Plaintiff's claims against Defendant occurred *after* Plaintiff filed his bankruptcy petition on May 12, 2010. Defendants argue that this distinction is irrelevant because Plaintiff's duty to disclose "claims that could be prosecuted for benefit of the estate" did not end once he submitted his petition to the bankruptcy court, and Plaintiff had an obligation to amend his financial statements if his circumstances changed. (*See* R. 151, Defs. Reply Br. at 2.) Defendants' argument, however, fails to account for the fact that post-petition causes of action are not property of the estate. *See Holstein v. Knopfler (In re Holstein),* 321 B.R. 229, 235 (Bankr. N.D.

9

Ill. 2005) ("Pre-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not." (quoting *Witko v. Menotte (In re Witko),* 374 F.3d 1040, 1042 (11th Cir. 2004))).

"Filing a Chapter 7 bankruptcy petition creates a bankruptcy estate comprised of 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Putzier v. Ace Hardware Corp.,* --- F. Supp. 2d ----, 2014 WL 2928236, at *11 (N.D. Ill. June 25, 2014) (quoting 11 U.S.C. § 541(a)(1)). Property a debtor acquires *post*-petition in a Chapter 7 case, however, does not become part of the bankruptcy estate (subject to certain exceptions that do not apply here). *See, e.g., id.*; *In re Anderson,* 463 B.R. 871, 877 (Bankr. N.D. Ill. 2011) ("[P]roperty acquired after the filing of a Chapter 7 bankruptcy petition, including post-bankruptcy earnings, is not property of the estate . . . ."); *Lyckberg v. Allstate Ins. Co. (In re Lyckberg),* 310 B.R. 881, 888 (Bankr. N.D. Ill. 2004) ("The bankruptcy estate's rights are limited to those that the debtor had at the time of the filing of the petition, and are not enhanced by the bankruptcy."). This rule "is as true for causes of action as it is for cars or televisions." *Holstein v. Knopfler (In re Holstein),* 321 B.R. 229, 235 (Bankr. N.D. Ill. 2005). Accordingly, "[a] cause of action that has accrued as of the commencement of the case is estate property[,]" but "[a] cause of action that accrues only after the case is commenced . . . is the debtor's to pursue for his own benefit." *Id.*; *Raines v. Chenoweth,* No. 1:03 CV 1289-JDT-TAB, 2005 WL 1115804, at *3 (S.D. Ind. Mar. 30, 2005) (Tinder, J.).

Nearly all of the events on which Plaintiff's claims against Defendants rest occurred *after* Plaintiff filed his Chapter 7 bankruptcy petition on May 12, 2010. Plaintiff's claims arising from those post-petition events are Plaintiff's property, not property of the estate. *See, e.g., Holstein,* 321 B.R. at 235; *Lyckberg,* 310 B.R. at 888; *Raines,* 2005 WL 1115804, at *3. Judicial estoppel,

therefore, does not preclude Plaintiff from pursuing those claims for his benefit in this action. *See Nehmelman v. Penn Nat'l Gaming, Inc.,* 790 F. Supp. 2d 787, 794 (N.D. Ill. 2011) (judicial estoppel barred the plaintiff's wage claims arising from wages the plaintiff earned through pre-petition work but not claims arising from wages earned through post-petition work).

Judicial estoppel does, however, preclude Plaintiff from asserting claims based on events that occurred before May 12, 2010. *See id.* Although Schedule B required Plaintiff to disclose any legal claims he may possess, regardless of the nature of the claims and whether they were contingent or unliquidated, Plaintiff failed to disclose his potential claims against Defendants based on their alleged harassment and discrimination against him dating back to 2007. Based on the alleged frequency and overtness of the harassment Plaintiff has alleged, it is unreasonable to infer that Plaintiff was not aware that he may have claims against Defendants when he filed his petition on May 12, 2010. *Cf. Cannon-Stokes,* 453 F.3d at 448 ("It is impossible to believe that such a sizeable claim—one central to [the plaintiff's] daily activities at work—could have been overlooked when [the plaintiff] was filling in the bankruptcy schedules."). Moreover, even if Plaintiff had simply overlooked the existence of his potential pre-petition claims against Defendants when filling in the bankruptcy schedules, he should have filed an amended Schedule B or moved to reopen the bankruptcy proceeding once he realized his mistake. *See id.* ("[I]f [the plaintiff] were really making an honest attempt to pay her debts, then as soon as she realized that it *had* been omitted, she would have filed amended scheduled and moved to reopen the bankruptcy, so that the creditors could benefit from any recovery."). Plaintiff, however, failed to do so, and as a result, judicial estoppel bars him from pursuing any pre-petition claims against Defendants for his personal benefit. *See id.*

**II.     2013 Bankruptcy Proceedings**

Second, with respect to the 2013 bankruptcy proceedings, judicial estoppel does not apply because Plaintiff did, in fact, disclose his pending claims in his submissions to the bankruptcy court, albeit not on Schedule B of his petition.  (*See* Pl. L.R. 56.1 Stmt. ¶¶ 14-15; *see also* Pl. Stmt. of Fin. Affairs at 2.)  Courts, including the Seventh Circuit, have repeatedly refused to apply judicial estoppel to bar claims that the plaintiff disclosed in some manner during the bankruptcy proceeding, even if the plaintiff had not included those claims in his initial schedules.  *See, e.g., Spaine,* 756 F.3d 542 (refusing to apply judicial estoppel where the plaintiff omitted her potential claim from her schedules but cured the omission by orally disclosing her claim during the creditors meeting); *Matthews v. Potter,* 316 Fed. App'x 518, 522-23 (7th Cir. 2009) (similar) (collecting cases).  As the Seventh Circuit has explained, the rationale for judicial estoppel in the bankruptcy context—*i.e.,* to "induce[] debtors to be truthful in their bankruptcy filings"—does not apply when, absent evidence of intentional concealment, the debtor cures an omission in his initial schedules through some other means of disclosure.  *See Spaine,* 756 F.3d 542.

Defendants have put forward no evidence showing that Plaintiff's failure to list his claims against Defendants in Schedule B was an attempt to intentionally conceal those claims. Indeed, the evidence shows that Plaintiff disclosed the pending litigation in his Statement of Financial Affairs he filed on the same day he submitted Schedule B.  Viewing the facts in the light most favorable to Plaintiff, the Court cannot say that Plaintiff intentionally concealed his claims against Defendants in the 2013 bankruptcy proceedings.  The Court, therefore, rejects Defendants' argument that judicial estoppel bars Plaintiff's claims based on his disclosures in the 2013 bankruptcy proceedings.

## CONCLUSION

For the reasons explained above, the Court denies Defendants' motion for summary judgment in large part. The Court, however, grants Defendants' motion in part and dismisses Plaintiff's claims with prejudice to the extent that they rest on events that occurred before May 12, 2010.

**DATED: August 22, 2014**               **ENTERED**

_____
AMY J. ST. EVE
United States District Court