# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH N. THOMPSON, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-cv-5020 |
| | ) | |
| THE VILLAGE OF MONEE, | ) | |
| JOHN CIPKAR, STEPHEN CRESCENTI, | ) | |
| JAMES JONES, and MICHAEL DRUMM, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

On February 27, 2014, Plaintiff Kenneth N. Thompson, brought a nine-count Fourth Amended Complaint against Defendants Village of Monee, individual Monee police officers and Monee's Chief of Police alleging deprivation of his constitutional rights under 42 U.S.C. § 1983, as well as state law claims. (*See* R.120, ¶¶ 64-69 (Count III – Excessive Force); *id.*, ¶¶ 70-77 (Count IV – Unreasonable Search and Seizure); *id.*, ¶¶ 97-102 (Count VIII – Monell Claim); *id.*, ¶¶ 70-77 (Count IX – Statutory Indemnification)).[1] This Court has original jurisdiction over Plaintiff's constitutional claims and supplemental jurisdiction over the state law claims. *See* 28 U.S.C. §§ 1331, 1367(a). Before the Court is Defendants' motion for summary judgment as to Counts III, IV, VIII and IX brought pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Defendants' summary judgment motion.

---

[1] Plaintiff voluntarily dismissed with prejudice Counts I, II, V, VI, and VII of the Fourth Amended Complaint. (*See* R.162; R.166.)

# BACKGROUND

## I.     Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994)).  Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009) (quoting L.R. 56.1(a)(3)).  The nonmoving party must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (quoting L.R. 56.1(b)(3)(B)).  The nonmoving party also may submit a separate statement of additional facts that requires the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon to support those facts. *See* L.R. 56.1 (b)(3)(C); *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments.  *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (finding Rule 56.1 statements incompliant when they fail to adequately cite the record and are filled with irrelevant information, legal arguments, and conjecture").  The Court may disregard statements and responses that do not properly cite to the record.  *See Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 809-10 (7th Cir. 2005).

Moreover, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). "[D]istrict courts are entitled to expect strict compliance with Local Rule 56.1." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006).

At the outset, the Court notes that Plaintiff's statement of additional facts references and provides a copy of the Use of Force Policy from the Monee Police Department Policy Manual. (*See* R.203, Defs' Response to Pltf's Rule 56.1 Statements of Addt'l Facts, ¶¶ 26, 27.) Defendants admit the statements made regarding the policy, but argue that they are "immaterial because this Court denied Thompson's motion to add a *Monell* policy claim." (*Id.*) The Court denied Plaintiff's motion to file an amended complaint to conform to the pleadings (R.193) due to concerns of prejudice to Defendants whom, at that time, had already filed summary judgment. (*See* R.196, Minute entry of March 10, 2015.) To the extent Plaintiff relies on the Use of Force Policy as a basis for its *Monell* claim in its Rule 56.1 Statement, the Court will not consider it here. The Court will, however, consider the Vehicle Towing Policy—also a subject of Plaintiff's motion to conform the pleadings—but only to the extent that Defendants have affirmatively put the policy at issue by relying on it in their summary judgment motion as it relates to Plaintiff's claim of unreasonable search and seizure of Thompson's vehicle. (*See* R.171, at 9; R.190, Pltf's Response to Defs.' Rule 56.1 Statement, ¶¶ 53-58.)

## II.   Relevant Facts

At all times relevant to the Fourth Amended Complaint,[2] Plaintiff Thompson was a resident of the Village of Monee and Defendants Drumm, Crescenti, and Jones were police

_____

[2] The facts presented in this section are relevant to the June 26, 2010 incident at the heart of Counts III (excessive force) and IV (unconstitutional search and seizure) of Thompson's Fourth Amended

3

officers with the Monee Police Department.  (Stmt. of Undisputed Facts, ¶ 1, 2.)[3]  Defendant

Cipkar became Chief of Police for the Village of Monee around April 2011 when Chief Caruso's

term ended.  (*Id.*, ¶ 3; R.121, Answer, ¶ 5.)  Defendant Village of Monee is a municipal

corporation of the State of Illinois.  (Stmt. of Undisputed Facts, ¶ 4.)

### A.    June 26, 2010 Incident – Officers Crescenti and Jones

Officers Crescenti and Jones were dispatched to Thompson's residence after an

abandoned 911 call registered from his address.  (Stmt. of Undisputed Facts, ¶ 7.)[4]  Officer

Crescenti was the first to arrive at the scene.  (*Id.*, ¶ 9.)  As Officer Crescenti approached the

area, he was met by Thompson's vehicle at the stop sign at Maple Court and Winfield Road.

(*Id.*, ¶¶ 10, 11; Stmt. of Addt'l Undisputed Facts, ¶ 2; *see also* Ex.F, Aerial Photograph.)  Maple

Court is the name for the cul-de-sac leading to Thompson's residence.  (Stmt. of Undisputed

Facts, ¶ 12.)  As Thompson drove away from the cul-de-sac with three female passengers, he

flagged down Officer Crescenti.  (*Id.*, ¶ 13.)  Thompson exited his car and told Officer Crescenti

that the women had threatened him with hammers and he wanted them out of his car.  (*Id.*, ¶ 14.)

Officer Crescenti called out on the radio for backup officers to "push it," meaning to respond to

the location quickly.  (*Id.*, ¶ 15.)  Officer Crescenti wanted backup officers on the scene in case

---

Complaint.  The facts relevant to Count VII (*Monell* claim) of the Fourth Amended Complaint are
presented *infra*, Analysis Section V.

[3] Citations to "Stmt. of Undisputed Facts" refer collectively to Defendant's Local Rule 56.1
Statement of Facts (R.172) and Plaintiff's Responses (R.190).  For purposes of clarity, the Court will use
this citation reference where the fact preceding the citation is undisputed or admitted.  "In determining
what is disputed, we focus not only on whether the parties profess to dispute a fact, but also on the
evidence the parties offer to support their statements.  When we cite as undisputed a statement of fact that
a party has attempted to dispute that reflects our determination that the evidence does not show that the
fact is in genuine dispute."  *Zitzka v. Vill. of Westmont*, 743 F.Supp.2d 887, 897 (N.D. Ill. 2010).

[4] Citations to "Stmt. of Addt'l. Undisputed Facts" refer collectively to Defendant's Local Rule
56.1 Statement of Additional Facts (R.191) and Plaintiff's Response (R.203).  For purposes of clarity, the
Court will use this citation reference where the fact preceding the citation is undisputed or admitted.

the situation escalated because he was not fully aware of the circumstances surrounding Thompson's assault complaint. (*Id.*, ¶ 16.) Officer Jones arrived at the scene and spoke briefly with Officer Crescenti, Thompson, and the three women—who were now outside of the vehicle. (*Id.*, ¶¶ 17-18.) While Officers Jones and Crescenti tried to speak with the women and investigate the assault allegation, Thompson yelled over the officers' efforts. (*Id.* ¶ 19.) Officer Jones advised Thompson to stop talking and stay put while he spoke with the women. (*Id.*, ¶ 20.) Instead, Thompson got back into his vehicle and left the scene, driving in reverse. (*Id.*, ¶ 21.) At that time, Officers Jones and Crescenti had no reason to believe that Thompson had committed a crime. (Stmt. of Addt'l Undisputed Facts, ¶¶ 8, 10.)

### B.    June 26, 2010 Incident – Officer Drumm

Officer Drumm was on a traffic stop, wearing a police uniform and driving a marked Monee squad car, when he heard the dispatch of the abandoned 911 call and Officer Crescenti's call for a faster backup. (Stmt. of Undisputed Facts, ¶¶ 22, 23.) Officer Drumm terminated the traffic stop and immediately responded to the intersection of Maple Court and Winfield Road. (*Id.*, ¶ 24.) What followed is largely undisputed, as the events were captured by a camera mounted on the dashboard of Officer Drumm's squad car. As Officer Drumm pulled up to the intersection he saw Thompson driving in reverse and saw Officer Jones motioning and saying "Make that guy come back here". (*Id.*, ¶ 25; Stmt. of Addt'l Undisputed Facts, ¶ 5.) When Officer Drumm received the instruction from Officer Jones at the intersection, Officer Drumm had no reason to believe that Thompson was the suspect fleeing from the scene of a crime. (Stmt. of Addt'l Undisputed Facts, ¶ 7.) Officer Drumm activated his squad car emergency lights and pursued Thompson's vehicle. (Stmt. of Undisputed Facts, ¶ 26.) Officer Drumm turned on his spotlight and shined it on Thompson's vehicle and, recognizing Thompson from previous encounters, used his PA system to specifically order him—by name—to stop the

vehicle.  (*Id.*, ¶¶ 27, 28; Stmt. of Addt'l Undisputed Facts, ¶ 12.)  Thompson appeared to stop his

vehicle, which now faced Officer Drumm's squad car.  (*Id.*, ¶ 29.)  As Officer Drumm drove

around Thompson's vehicle and positioned his squad car in the cul-de-sac in an effort to block it,

Thompson did not stop, but drove his car into his driveway and pulled forward into his open

garage.  (*Id.*, ¶¶ 30, 31.)  In response, Officer Drumm pursued Thompson's vehicle and pulled

into the driveway.  (*Id.*, ¶ 32.)  Officer Drumm was the only officer with Thompson and he did

not know the circumstances surrounding Thompson's prior interaction with Officers Crescenti,

Officer Jones, and the three females at the intersection.  (*Id.*, ¶ 33.)  Nor did Officer Drumm

know why Thompson left the scene.  (*Id.*)

### C.      The June 26, 2010 Arrest

After Thompson drove into his open garage, he exited his vehicle and advanced toward

Officer Drumm with his hands at his sides.  (Stmt. of Undisputed Facts, ¶¶ 31, 37.)  Officer

Drumm did not know whether Thompson had any weapons on his person or in the car or garage,

or whether there were any other people in the vehicle or in the open garage.  (*Id.*, ¶ 34.)  Officer

Drumm exited his squad car with his service weapon drawn and walked toward Thompson

yelling: "Show me your hands or you're going to get shot.  Right now, on the ground.  On the

ground.  Right now.  On the god-damned ground right now.  Face down, now."  (R.203, ¶ 12.)

Video surveillance from Officer Drumm's squad car shows Thompson advancing toward Officer

Drumm with his arms extended along his sides and Officer Drumm advancing toward

Thompson.  (R.172, Ex. I, In-Squad Video, 6:07ff.)  In the garage, Officer Drumm made

physical contact with Thompson and pushed him to the ground and Thompson's feet lifted in the

air as he hit the ground.  (Stmt. of Addt'l Undisputed Facts, ¶ 13.)  Officer Drumm ordered

Thompson to turn face-down so that he could handcuff him and, several times, ordered

Thompson to put his hands behind his back, straighten out his legs, and to stop moving.  (*Id.*,

¶¶ 40, 42; R.172, Ex. I, In-Squad Video, 6:10ff ("Now. Face down, put your hands behind your back. Now. Now. Hands behind your back, legs straight out. Do not move. Do not move").) After putting his service weapon away, Officer Drumm handcuffed Thompson. (*Id.*, ¶ 41.) While on the ground, Thompson stated—overlapped with Officer Drumm's words—"Ok, Ok, Ok … they have hammers, weapons, and knives … what did I do?" (R.172, Ex. I, In-Squad Video, 6:34ff.) At one point, Officer Drumm responds to his question, stating: "fleeing/eluding." (*Id.*, 7:00ff.) Officer Drumm handcuffed Thompson, assisted him off the ground and placed him in his squad car. (Stmt. of Undisputed Facts, ¶ 43.) Officer Drumm arrested Thompson in less than 15 seconds after he followed Thompson's vehicle into the driveway. (*See id.*, ¶ 32 (describing the video of Officer Drumm following Thompson's vehicle onto the driveway as occurring at 6:00ff); *id.*, ¶ 40 (describing the video of Officer Drumm ordering Thompson to turn face-down to be handcuffed at 6:14ff).)

Thompson continually spoke with Officer Drumm throughout the incident and during the transport to the station. (*Id.*, ¶ 44.) Thompson did not mention any use of force or any discomfort he may have been feeling. (*Id.*, ¶ 45.) Officers Crescenti and Jones did not come to the scene by the garage until after Thompson was arrested and placed in the squad car. (*Id.*, ¶¶ 46-47.)

### D.     The Search and Seizure

After Thompson was arrested, Officer Drumm took Thompson to his squad car and placed him inside. (Stmt. of Addt'l Undisputed Facts, ¶ 14.) While Thompson was handcuffed inside Officer Drumm's squad car, Officer Drumm opened the passenger side door of the car Thompson had been driving—now parked in Thompson's garage—and searched its interior. (*Id.*, ¶ 15.) During this search, Officer Crescenti walked to the entrance of the garage and spoke

to Officer Drumm.  (*Id.* ¶ 16.)[5]  Officer Drumm opened the driver's side door, and at that point,

both the passenger's side door and the driver's side doors of the car Thompson had been driving

were open.  (*Id.*, ¶ 17.)  As Officer Drumm searched the car with both its driver's side and

passenger's side doors open, Officers Crescenti and Jones arrived, entered the garage, and stood

near the driver's side of the car.  (*Id.*, ¶ 18.)  All three officers stood inside the garage near the

driver's side of the car Thompson had been driving, with both car doors open.  (*Id.*, ¶ 19.)

Officer Crescenti closed the driver's side door of the car, then opened the door and entered the

car and searched its interior while Officers Drumm and Jones remained in the garage.  (*Id.*, ¶ 20.)

Officer Crescenti then opened the trunk of the vehicle while Officers Drumm and Jones were

present.  (*Id.*, ¶ 21.)  Officers Drumm and Crescenti conducted the search without a warrant.

(*Id.*, ¶ 22.)  All three officers stood by while the three females—previously passengers in the

vehicle and involved in the earlier questioning—removed bags from the trunk of the car.  (*Id.*, ¶

23.)  When the tow truck driver arrived at the garage, Officer Drumm told the tow truck driver,

"the Mitsubishi's in the garage, we cannot find keys for [sic].  It's an impound … and I've got a

tow sheet for you."  (*Id.*, ¶ 24.)  At Officer Drumm's direction, the tow truck driver towed the car

from Thompson's garage without a warrant.  (*Id.*, ¶ 25.)

     Officer Drumm impounded Thompson's vehicle pursuant to Chapter 4 of the Monee

Village Code.  (Stmt. of Undisputed Facts, ¶ 52.)  Section 6-4-8(K) of Chapter 4 provided that

---

[5] Although Defendants' Rule 56.1 Statement of Facts asserts that "[n]either Officer Crescenti nor
Officer Jones were involved in the search of Thompson's vehicle (R.190, ¶ 59), Plaintiff disputes this
facts and in support cites the video footage showing all three officers present during the search and
Officer Crescenti looking in Thompson's vehicle.  (*See id.*, ¶ 59, Response.)  Plaintiff's Rule 56.1
Statement of Additional Facts asserts that Crescenti and Jones were present as Officer Drumm searched
Thompson's vehicle and that the "search of the interior by Drumm and Crescenti was performed without
a warrant." (R.203, ¶¶ 15-23.)  Defendants admit this fact.  (*Id.*, ¶ 23.)  Accordingly, the evidence
supports the undisputed fact that the search of Thompson's vehicle was conducted by, at least, Officers
Drumm and Crescenti and that Officer Jones was present during part of the search.

vehicles in violation of the following *shall* be impounded: the driver operated the vehicle while intoxicated; unlawful drugs in motor vehicle; driving without a license or while license is suspended or revoked; and fleeing or eluding a police officer. (*Id.*, ¶ 53.) Officer Drumm indicated on the Notice of Vehicle Impoundment that the car was being impounded because Thompson drove while intoxicated, while his license was suspended, and for fleeing or eluding. (*Id.*, ¶ 54.) Officer Drumm served Thompson with a copy of the Notice of Vehicle Impoundment. (*Id.*, ¶ 55.) Prior to the vehicle being towed, Officer Drumm completed an inventory search of the vehicle and prepared a Tow Report pursuant to the Monee Police Department Vehicle Towing Policy. (*Id.*, ¶ 56.) The Vehicle Towing Policy provided that all property in a stored or impounded vehicle must be inventoried and listed on a tow report and directed officers to be as thorough and accurate as practical in preparing the inventory, which is to include a trunk of a vehicle and any compartments or containers, even if closed or locked. (*Id.*, ¶ 57.) The Vehicle Towing Policy expressly stated that these procedures are for the purpose of protecting an owner's property while in police custody, to provide for the safety of others, and to protect the Department against fraudulent claims of lost, stolen, or damaged property. (*Id.*, ¶ 58.)

Officer Drumm issued five citations to Thompson: (1) improper backing; (2) failure to yield to an emergency vehicle; (3) aggravated fleeing or attempting to elude; (4) driving with a suspended license; and (5) driving under the influence. (*Id.*, ¶ 50.) A jury in the Circuit Court of the Twelfth Judicial Circuit in Will County, Illinois, found Thompson guilty of driving on a suspended license and obstructing a police office and found him not guilty of driving under the influence. (*Id.*, ¶ 51; *see* R.172-4, Ex. K, *Illinois v. Thompson*, Case No. 10 CM 2037, Court Order, July 27, 2011.)

# SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the admissible evidence shows that no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A 'material fact' is one identified by the substantive law as affecting the outcome of the suit." *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A 'genuine issue' exists with respect to any such material fact, and summary judgment is therefore inappropriate, when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bunn*, 753 F.3d at 681-82 (citing *Anderson*, 477 U.S. at 248). Conversely, "where the factual record taken as a whole could *not* lead a rational trier of fact to find the nonmoving party, there is nothing for a jury to do." *Bunn*, 753 F.3d at 682 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original)).

In determining whether a genuine issue of material fact exists, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See Bunn*, 753 F.3d at 682 (citing *Anderson*, 477 U.S. at 255); *see also Kvapil v. Chippewa County, Wis.*, 752 F.3d 708, 712 (7th Cir. 2014). However, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 248 (emphasis in original). In reviewing evidence opposing a motion for summary judgment, courts are not obliged to entertain a "metaphysical doubt." *Matsushita*, 475 U.S. at 586. Summary judgment will be granted against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712

F.3d 1166, 1167 (7th Cir. 2013).  With these standards in mind, the Court addresses Defendants'
motion.

## ANALYSIS

### I.  Count III – Excessive Force During Arrest on June 26, 2010

#### A.  Officer Drumm's Reasonable Use of Force

In Count III of his Fourth Amended Complaint, Thompson alleges that Officers Drumm,
Jones and Crescenti used excessive force while arresting him.  (*See* R.120, ¶¶ 64-69.)
Defendants argue that Officer Drumm's use of his weapon and order to Thompson to show his
hands was reasonable given that Thompson had twice disobeyed police orders and had turned
and directly approached Officer Drumm with his hands at his sides after quickly parking his
vehicle in his open garage.  Plaintiff responds that Officer Drumm's use of his weapon
constituted unreasonable deadly force because there was no probable cause to find Thompson
dangerous or a suspect to a violent crime.  Plaintiff also argues that the *Graham* reasonableness
standard is not met here, in part, because Thompson was not the suspect—he was the
complainant.  (R.189, at 7-8 (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104
L.Ed.2d 443 (1989)).)

Courts review excessive force claims under the Fourth Amendment's objective
reasonableness standard.  *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010)
(citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); *see also
Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("Garner") (explaining
that a police officer's use of deadly force is a seizure within the meaning of the Fourth
Amendment and accordingly must be reasonable).  "An officer's use of force is unreasonable
from a constitutional point of view only if, 'judging from the totality of circumstances at the time

of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'"

*Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (citation omitted). "The nature and extent of the force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cyrus*, 624 F.3d at 861-62 (citation omitted).

Because the relevant inquiry is objective, the officer's subjective good or bad intentions do not enter into the analysis. *See Graham,* 490 U.S. at 395. Instead, courts must view the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Moreover, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Ryburn v. Huff*, 132 S.Ct. 987, 992, 181 L.Ed.2d 966 (2012) (citing *Graham*, 490 U.S. at 396-97); *see also Scott v. Edinburg,* 346 F.3d 752, 756 (7th Cir. 2003); *DeLuna v. City of Rockford, Ill.*, 447 F.3d 1008, 1010 (7th Cir. 2006) (citations omitted). If an officer believes that the suspect's actions place him, or others in the immediate vicinity, in imminent danger of death or serious bodily injury, an officer can reasonably use deadly force. *See DeLuna*, 447 F.3d at 1010; *Scott,* 346 F.3d at 756; *Muhammed v. City of Chicago,* 316 F.3d 680, 683 (7th Cir. 2002).

Construing the facts and all reasonable inferences in the light most favorable to Thompson, *see Bunn*, 753 F.3d at 682, Officer Drumm's use of force was reasonable under the circumstances presented here. Officer Drumm was responding to Officer Jones' call for backup

officers to "push it," meaning to respond to the location quickly in response to an abandoned 911 call. Officer Drumm arrived just as Thompson drove, in reverse, away from the intersection where Officer Jones and Officer Crescenti were questioning the female passengers. Officer Jones directed Officer Drumm to follow Thompson and bring him back for questioning. Officer Drumm followed Thompson with his emergency lights flashing and warned Thompson to stop. Although Thompson stopped initially, he then turned and pulled his vehicle into his open garage—again disobeying a police officer's order. Officer Drumm pursued Thompson's vehicle and pulled into the driveway. It is undisputed that Officer Drumm did not know whether Thompson had any weapons on his person or in the car or garage, or whether there were any other people in the vehicle or in the open garage. Thompson then exited his car and began walking directly toward Officer Drumm with his hands at his sides. Officer Drumm had exited his squad car and drawn his service weapon and yelled at Thompson to show his hands or he would be shot. Thompson did not comply. Officer Drumm pushed Thompson to the ground. Once on the ground, Thompson did not resist and it is undisputed that Officer Drumm put his service weapon away and handcuffed Thompson before taking him to the squad car.

These undisputed facts demonstrate that Officer Drumm's response and the nature and extent of force used were reasonable based on the specific circumstances. *See Cyrus*, 624 F.3d at 861-62 (*citing Graham*, 490 U.S. at 396) ("The nature and extent of the force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight'"). Officer Drumm's first duty upon arrival on the scene was to bring Thompson back after he had quickly left the scene where Officer Jones had not finished questioning him.

Thompson then ignored a second police directive to stop his vehicle, now from Officer Drumm, and instead drove away into his garage. Officer Drumm did not know why Thompson retreated into his garage, nor did he know whether Thompson was armed or whether someone else was in the vehicle or garage. Officer Drumm had to make a split second decision under tense, uncertain and rapidly evolving circumstances. Given the assessment of a risk of potential danger faced by Officer Drumm, briefly drawing his service weapon until he could safely secure Thompson in handcuffs was objectively reasonable. *See Rebolar ex rel. Rebolar v. City of Chicago*, 897 F.Supp.2d 723, 736-37 (N.D. Ill. 2012) (officers acted reasonably in pointing their weapons at a suspect who had disobeyed order to show his hands); *see also Wiliams v. City of Champaign*, 524 F.3d 826, 829 (7th Cir. 2008) (police acted reasonably in approaching a van with guns drawn in response to report that occupants may have been involved in a robbery); *Cherry v. Washington Cty.*, 526 Fed. Appx. 683, 687 (7th Cir. 2013) (unpublished) (affirming summary judgment against the plaintiff's excessive force claim where the defendant officers pointed their guns at the plaintiff, pushed him to the ground, and pressed his face on the road during arrest after they found shotgun shells at the scene of the robbery and apprehended the suspects an hour later alongside the road—based on a matched description—and defendants disobeyed the officers' instructions to look straight ahead and not turn around).

Although Thompson argues that Officer Drumm's drawn service weapon and verbal threat to shoot constitute the use of unreasonable deadly force, the Seventh Circuit has established a "critical point" that "while police are not entitled to point their guns at citizens when there is no hint of danger, they are allowed to do so when there *is* reason to fear danger." *Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009) (emphasis in original); *see also Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989) ("[T]he action of a police officer in pointing a gun at a

person is not, in and of itself, actionable … Where the officer merely points a gun at a suspect in the course of arresting him, the suspect would have no basis for claiming that he had been seized with excessive force in violation of the Constitution"). A reasonable officer's assessment of the situation outside Thompson's residence on July 26, 2010 provides a basis for a reason to fear danger. Whether Thompson actually "fled" or not, a reasonable officer faced with Thompson's actions in driving away from the scene of questioning and ignoring a second police directive to stop would have thought Thompson was trying to flee, thereby justifying the use of a higher degree of force to protect the community and the other officers. *See Smith v. City of Chicago*, 242 F.3d 737 (7th Cir. 2001) (finding "a reasonable officer would have thought [the defendant] was trying to flee, thereby justifying the use of a higher degree of force to protect the community and the officers than that needed for someone who committed only a minor traffic violation" where the defendant did not pull over after being followed by police cars playing their sirens); *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 486-87 (7th Cir. 2011) ("An officer, faced with a suspect fleeing toward his home and ignoring police commands, is not obliged to give that suspect an opportunity to retreat into his home and, perhaps, to fortify himself or to escape before the officer employs reasonable means of incapacitation); *cf. United States v. Norris,* 640 F.3d 295, 303 (7th Cir. 2011) (holding that an officer's single use of a taser was reasonable where used to subdue an arrestee who had failed to accede to repeated police commands to stop his retreat into his home). Officer Drumm's actions were also reasonable given that Thompson directly walked toward Officer Drumm with his hands down along his sides after Officer Drumm told him to show his hands and get on the ground. Officer Drumm had no idea how Thompson was going to behave once Thompson came close to him or to think that Thompson—who had disobeyed police orders—was unarmed. Given the uncertainties of the situation that faced

Officer Drumm, his use of the amount and type of force involved here was objectively reasonable.  *See Johnson v. Scott*, 576 F.3d 658, 660-661 (7th Cir. 2009).

Plaintiff relies on *Jacobs v. City of Chicago*, 215 F.3d 758, 773-74 (7th Cir. 2000), to support his position that drawing a weapon was an unreasonable use of deadly force.  This case, however, is distinguishable.  The plaintiff in *Jacobs* was sitting at home alone in his apartment when police officers—executing a search warrant—broke down his door, entered his home without warning and kept a gun pointed at his head for over 10 minutes, even after determining that he was not the correct suspect.  *See Jacobs*, 215 F.3d at 773.  During this time, the plaintiff in *Jacobs* did "nothing more threatening than provide the officer with his identification and ask the officer for permission to sit down."  *Id*.  The Seventh Circuit held the police officers use of force was "clearly unreasonable" as they had no reason to suspect the unarmed plaintiff was a dangerous criminal, or that he had committed any crime at all, and the plaintiff "had done nothing either to attempt to evade the officers or to interfere with the execution of their duties."  *Id.* at 774.  Unlike the plaintiff in *Jacobs*, Thompson interfered with the performance of the officers' duties in questioning the women at the intersection by yelling over them and on two different occasions disobeyed officers' instructions to stay put and stop his vehicle.  As he exited his vehicle, Thompson advanced toward Officer Drumm out of the open garage with his hands at his sides.  Unlike the defendants in *Jacobs*, Officer Drumm briefly drew and pointed his service weapon until he could secure Thompson in handcuffs.  This use of force was a reasonable split second decision under circumstances that would heighten any reasonable officer's concern for safety in an uncertain and rapidly evolving situation.[6]  *See Ryburn* 132 S.Ct. at 992; *see also Rebolar,* 897 F.Supp.2d at 736-37.

---

[6] Even if Officer Drumm's pointing of his service weapon at Thompson did constitute deadly force, the undisputed facts show that such force would have been reasonably exercised where Thompson

Thompson argues that Officer Drumm's use of force was unreasonable because Officer Drumm testified that he had no reason to suspect Thompson was a suspect fleeing from the scene of a crime when Officer Jones gave Officer Drumm the direction to stop Thompson. This argument fails for at least two reasons. First, Thompson's argument sounds in probable cause, but he is not disputing the lawfulness of his arrest in this case and was convicted of driving on a suspended license and obstructing Officer Jones' duties. Second, Officer Drumm personally observed additional acts on Thompson's behalf—namely, his second attempt to drive away from a police officer after being told to stop and his actions in directly approaching Officer Drumm with his hands at his sides. These reasons provide a further basis for a reasonable officer to suspect potential danger and respond accordingly. An officer may use some degree of physical force—as long as it is reasonable under the Fourth Amendment—when he stops or arrests someone. *See Rabin v. Flynn,* 725 F.3d 628, 636 (7th Cir. 2013). Officer Drumm's use of force was reasonable here.

As such, viewing the facts and all reasonable inferences in Thompson's favor, he has failed to set forth sufficient evidence raising a genuine issue of material fact for trial that Officer Drumm used unreasonable force during the June 26, 2010 arrest. *See Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007) (granting summary judgment to the defendant officers on the plaintiff's excessive force claim where the plaintiff offer no real contradictory evidence and any

---

repeatedly ignored police directives and advanced toward Officer Drumm after entering his garage with his hands at his sides—rather than getting on the ground or showing his hands as demanded by the officer. In addition, Officer Drumm did not know at that time whether Thompson had any weapons on his person or in the car or garage, or whether there were any other people in the vehicle or in the open garage. *See DeLuna v. City of Rockford*, 447 F.3d 1008, 1011-13 (7th Cir. 2006) (affirming use of deadly force where decedent refused officer's order to raise his hands and walked towards the officer with his arms extended to his sides); *Muhammed v. City of Chicago,* 316 F.3d 680, 683 (7th Cir. 2002) (citing *Garner,* 471 U.S. at 11-12) (Deadly force may only be used if the officer has probable cause to believe that an armed suspect "poses a threat of serious physical harm, either to the officer or to others"); *Sherrod v. Berry,* 856 F.2d 802, 805 (7th Cir. 1988) (en banc).

inconsistencies were minor and not unusual).  The unrefuted evidence demonstrates that Officer

Drumm pointed his weapon at Thompson when arresting him after Thompson had twice

disobeyed police orders and after Thompson had directly approached Officer Drumm when the

officer was telling him to get on the ground.  The undisputed facts also show that Officer Drumm

put away his service weapon once he handcuffed Thompson and no physical interactions are

asserted to have occurred between them after Officer Drumm took Thompson to the squad car.

The Court, therefore, grants Defendants' summary judgment motion as to Thompson's excessive

force claim against Officer Drumm as alleged in Count III of the Fourth Amended Complaint.[7]

### B.        Alleged Failure to Intervene by Officers Crescenti and Jones

Plaintiff also alleges that Officers Crescenti and Jones caused Thompson to suffer an

unreasonable seizure on June 26, 2010 due to their failure to intervene to prevent it.  (R.120,

¶ 66.)  Defendants move for summary judgment as to Officers Crescenti and Jones' involvement

in Thompson's arrest on June 26, 2010, arguing that the officers had no opportunity to intervene

because they were not present when the physical confrontation occurred between Thompson and

Officer Drumm.  (R.171, at 9.)  Plaintiff does not oppose Defendants' argument.  (R.189, at 1,

9-10; *see also* R.204, at 10.)  Although not opposed, the Court must determine whether the

undisputed facts support a finding in favor of Defendants Crescenti and Jones.  Here, it is

undisputed that Officers Crescenti and Jones were not physically present at the scene when

Officer Drumm arrested Thompson on July 26, 2010.  The video evidence shows only Officer

Drumm and Thompson present at the garage when Officer Drumm exited from his patrol car and

confronted Thompson, resulting in his arrest.  "Individual liability under § 1983 requires

---

[7] Because Thompson has failed to raise a genuine issue of material fact that Officer Drumm
violated his constitutional rights related to his excessive force claim, the Court need not address
Defendants' qualified immunity arguments.  *See Bivent v. Trent*, 591 F.3d 555, 559-60 (7th Cir. 2010);
*Williams v. Rodriguez*, 509 F.3d 293, 298 (7th Cir. 2007).

personal involvement in the alleged constitutional deprivation." *Minix v. Canarecci,* 597 F.3d 824, 833–34 (7th Cir. 2010). The Court, therefore, grants Defendants' motion for summary judgment of Count III as it pertains to Officers Crescenti and Jones and any alleged failure to intervene during Thompson's arrest on June 26, 2010.

## II.     Count IV - Search and Seizure of Thompson's Vehicle on June 26, 2010

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. Amend. IV. The ultimate touchstone of the Fourth Amendment is "reasonableness". *Heien v. North Carolina,* ___ U.S. ___, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014) (*citing Riley v. California,* 573 U.S. ___, 134 S.Ct. 2473, 2482, 189 L.Ed. 2d 430 (2014)). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien,* 135 S.Ct. at 536 (*citing Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Thompson contends that Defendants violated his constitutional rights through their warrantless impoundment and corresponding search of his vehicle. In assessing Thompson's argument, "the decision to impound (the 'seizure') is properly analyzed as distinct from the decision to inventory (the 'search')." *United States v. Duguay,* 93 F.3d 346, 351 (7th Cir. 1996). A decision to impound and a decision to conduct a search "are warranted in different (though frequently overlapping) circumstances." *Id.* (*citing South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3902, 49 L.Ed.2d 1000 (1976)). The "strictures of the Fourth Amendment" must be met by both the decision to take the car into custody and the concomitant inventory search. *Id.* The reasonableness of a search or seizure "within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case." *Opperman,* 428 U.S. at 375; *see also Soldal v. Cook County,* 506 U.S. 56, 71, 113 S.Ct. 538, 121

L.Ed.2d 450 (1992) ("[t]he standard for whether a seizure survives constitutional scrutiny is reasonableness, not merely whether officers had a warrant").

## A.      Impound of Thompson's Vehicle

Defendants argue that Officer Drumm impounded Thompson's car pursuant to the Monee Village Code that provided for impoundment upon a variety of offenses, including driving while intoxicated,[8] driving on a suspended license, and fleeing or eluding a police officer.  (R.171, at 9.)  Defendants further argue that Officer Drumm's and Officer Crescenti's search of Thompson's vehicle was lawful as an inventory search conducted prior to towing and pursuant to standard police procedures.  (*Id.*, at 9-10; *see also* R.172-4, Ex., L, Monee Village Code, Chapter 4; *id.*, Ex. M, Vehicle Towing Policy.)  Thompson argues that the warrantless search and impoundment of his vehicle were both unreasonable under the Fourth Amendment because Thompson's car was within the protected curtilage of his home—parked in his attached garage.  (*See* R.189, at 10-12.)  "The decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots."  *Duguay*, 93 F.3d at 351.

### 1.      The Officers Had Probable Cause to Believe Thompson's Car Was Subject to Seizure and Forfeiture

Defendants claim they are entitled to summary judgment because Thompson's vehicle was used in commission of an offense—aggravated fleeing or attempting to elude a police

---

[8] The parties dispute whether Thompson was intoxicated (*see* R.190, ¶¶ 48, 49.)  Treating the facts and reasonable inferences in the light most favorable to Thompson, the Court focuses its analysis on the undisputed facts supporting the officers' knowledge that Thompson was driving on a suspended license and that Thompson had acted in a manner reasonably assessed as fleeing/eluding a police officer—as discussed *supra*, Analysis Section I.A, a reasonable assessment based on Thompson's behavior at the scene.

officer—that subjected his vehicle to forfeiture. *See United States v. Pace*, 898 F.2d 1218, 1241-42 (7th Cir. 1990) (holding that a vehicle may be seized without a warrant if there is probable cause to believe that it is subject to forfeiture).[9] Police may seize vehicles without a warrant as long as they have probable cause to believe the vehicle is subject to seizure. *See Florida v. White,* 526 U.S. 559, 561, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999) ("White"); *Pace,* 898 F.2d at 1241–42; *see also G.M. Leasing Corp. v. United States,* 429 U.S. 338, 352, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) ("seizing cars to satisfy a tax debt, absent an invasion of privacy, does not require a warrant"). Here, Thompson's car was subject to seizure. Under Illinois law, Article 36 of the Criminal Code governs "Seizure and Forfeiture of Vessels, Vehicles and Aircraft." 720 ILCS 5/36, *et seq.* The statute addressing the specific offenses subjecting a vehicle to seizure and forfeiture states "[a]ny … vehicle … may be seized and impounded by the law enforcement agency if the … vehicle … is used with the knowledge and consent of the owner in the commission of … an offense prohibited by …." *See* 720 ILCS 5/36-1(a). The specified offenses which range from first degree murder and armed robbery to driving under the influence without a valid driver's license (*see* 720 ILCS 5/36-1(a)(1)-(8)) and include "Section 11-204.1 of the Illinois Vehicle Code (aggravated fleeing or attempting to elude a peace officer)". *See* 720 ILCS

---

[9] Plaintiff's assertion that this argument is grossly belated is misplaced as Defendants supplemental briefing was directly in reply to the Court's Order requesting briefing on the topic of probable cause for seizure of Thompson's vehicle. (*See* R.205.) In addition, Plaintiff was provided an opportunity to reply to Defendants' supplemental briefing and, therefore, any concerns normally present, when belated arguments filed in reply do not provide the opposing party with a chance to respond, are absent. *See CHC Cobrasource, Inc. v. Mangrove Cobrasource, Inc.*, No. 12 C 1832, 2012 WL 1952930, at *1 (N.D. Ill. May 30, 2012) (explaining that although a party generally waives an argument that it raises for the first time on reply, where the opposing party had an opportunity to respond to the argument, no waiver occurs); *see also Moorehead v. Deutsche Bank AG,* No. 11 C 106, 2011 WL 4496221, at *5 (N.D. Ill. Sept. 26, 2011) (no waiver of arguments raised on reply where the court allowed sur-reply).

5/36-1(a)(5)).  Aggravated fleeing or attempting to elude a peace officer is further defined by the

Illinois Vehicle Code in Section 11-204.1, which states:

> (a)   The offense of aggravated fleeing or attempting to elude a peace officer is
> committed by any driver or operator of a motor vehicle who flees or attempts to
> elude a peace officer, after being given a visual or audible signal by a peace officer
> … and such flight or attempt to elude:
> …
> (3) causes damage in excess of $300 to property;
> …

625 ILCS 5/11-204.1.  In addition, Illinois law grants municipalities the power to establish

programs for vehicle immobilizations.  *See* 625 ILCS 5/11-208.3(C); *see also Kosyla v. City of

Des Plaines*, 256 Fed. Appx. 823, 825 (7th Cir. 2007) (unpublished).  It is undisputed that

Officer Drumm impounded Thompson's vehicle pursuant to Chapter 4 of the Monee Village

Code.  (Stmt. of Undisputed Facts, ¶ 52.)  Section 6-4-8(K) of Chapter 4 provides a list of

offenses warranting impound of a vehicle including a driver operating the vehicle while

intoxicated, use of the vehicle to transport unlawful drugs, driving the vehicle without a license

or with a suspended or revoked license, and using the vehicle to flee or elude a peace officer.

(*See id.*, ¶ 53; *see also* R.172-4, Ex. L, Monee Village Code, Chapter 4, Motor Vehicle

Impoundment, Section 6-4-8(K).)

    The Fourth Amendment does not require a warrant for seizure of a vehicle where police

seize the vehicle from a public area having probable cause to believe that the vehicle *itself* is

contraband.  *See White*, 526 U.S. at 564-65, 66.  In *White*, the police saw the respondent use his

car to deliver cocaine, providing them probable cause to believe that the vehicle was used in the

commission of criminal activity and subject to forfeiture under the Florida Contraband Forfeiture

Act.  *Id.* at 561.  Although the police in *White* "lacked probable cause to believe that

respondent's car contained contraband … they certainly had probable cause to believe that the

vehicle *itself* was contraband under Florida law." *Id.* at 565.  The Supreme Court did emphasize

that because police seized the respondent's vehicle from a public area—respondent's employer's

parking lot—the warrantless seizure did not involve any invasion of respondent's privacy.  *Id.* at

566; *see also United States v. Banks*, 682 F.Supp.2d 811, 818-19 (N.D. Ill. 2009) (finding the

officers had probable cause to impound the defendant's vehicle when they believed he used the

vehicle in an attempt to purchase drugs); *Stevens v. Hartzler*, No. 2:11-cv-89-JMS-WGH, 2012

WL 1564156, at *4 (S.D. Ind. May 1, 2012) (granting summary judgment to the defendant due to

lack of personal involvement and further finding the undisputed evidence supported the impound

of the plaintiff's vehicle, parked on the street, based on probable cause to believe that the vehicle

was forfeitable contraband due to its use to transport cocaine).

Here, Officer Drumm indicated on the Notice of Vehicle Impoundment that the car was

being impounded for various offenses, including fleeing or eluding.  (*Id.*, ¶ 54.)  Officer Drumm

served Thompson with a copy of the Notice of Vehicle Impoundment.  (*Id.*, ¶ 55.)  It is further

undisputed that Officer Drumm gave Thompson a visual signal by activating his emergency

overhead lights and an audible signal, calling out over his PA system for Thompson, by name, to

stop.  (Stmt. of Undisputed Facts, ¶¶ 26-28; Stmt. of Add'l Undisputed Facts, ¶ 12.)  The

Plaintiff disobeyed these directives and drove onto the lawn and into his garage, where Officer

Drumm arrested him.  Officer Drumm's Offense/Incident Report indicates that the

approximation of damages caused to Thompson's car stemming from the incident is in excess of

$300.  (*See* R.203-2, at 18 (estimating the front end damage to the property and to Thompson's

car caused when Thompson left the roadway and drove into his driveway to be "greater than

$300.00 ($501.00 to $1,500.00 on the crash report)".)  Thompson does not dispute this evidence.

Looking at the undisputed facts in the light most favorable to Thompson, there is no genuine

issue of material fact to preclude a finding that a reasonable officer would have probable cause to believe that the vehicle driven by Thompson was used in the commission of the offense of aggravated fleeing or attempting to elude a peace officer—subjecting the vehicle to seizure and forfeiture under Illinois law.[10]  *See Pace,* 898 F.2d at 1244–45 (citing *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)).  Accordingly, the officers' seizure of Thompson's vehicle was objectively reasonable due to the existence of probable cause for its use in commission of fleeing and eluding a peace officer—an offense warranting civil forfeiture.  *See Pace*, 898 F.2d at 1241-42.

Thompson tries to distinguish the basis for probable cause here from *Pace,* arguing that unlike the *Pace* vehicle parked in a building garage that someone other than the defendants lived in, the officer seized Thompson's vehicle from the private property of his garage.  *See Pace*, 898 F.2d at 1242.  This single difference, Thompson argues, renders *Pace* inapplicable because the seizure of Thompson's vehicle was from the curtilage of his home, rather than from a public place.  *See Vinson v. Vermilion Cnty*, 776 F.3d 924, 929 (7th Cir. 2015) (finding the plaintiffs' attached garage and the areas immediately surrounding their home and garage fit comfortably within the scope of the Fourth Amendment's protections of the home).  The Seventh Circuit in *Pace* noted "seizing a car from a public place based on probable cause is analogous to arresting a person outside the home based on probable cause.  Such an arrest, even without a warrant, does not violate the Fourth Amendment …."  *Id.*  The fact that Thompson's car was parked in his

_____

[10] Officer Drumm's Offense/Incident Report recalling the events of June 26, 2010 indicates that he contacted Will County ASA Dan Walsh, told him about the circumstances of the incident, contact, crash report, and Drumm's attempt to stop the car, to which ASA Walsh "approved felony aggravated feeling or attempting to elude a peace officer charge."  R.203-2, at 18.  Officer Drumm then processed Thompson and issued him a citation for various offenses, including aggravated fleeing or attempting to elude governed by 625 ILCS 5/11-204.1.  *Id.*  Thompson did not dispute this evidence.

attached garage when it was seized does not in this case, however, provide a privacy shield for Thompson.

The constitutionally prescribed sanctity of the home is not limitless. "Because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart,* 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (citing *Flippo v. West Virginia,* 528 U.S. 11, 13, 120 S.Ct. 7, 8, 145 L.Ed.2d 16, 19 (1999) *(per curiam)*); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967). "[L]aw enforcement officers may make a warrantless entry onto private property to fight a fire and investigate its cause, to prevent the imminent destruction of evidence, or to engage in 'hot pursuit' of a fleeing suspect." *Brigham City,* 547 U.S. at 403, (*citing United States v. Santana,* 427 U.S. 38, 42, 43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976)). Relevant to the matter at hand is one of those enumerated "exceptions," namely, "hot pursuit" as set forth by *Santana,* 427 U.S. at 42–43.

The undisputed facts establish that the officers had a right to be in Thompson's garage and had probable cause for Thompson's arrest and seizure of his vehicle. Indeed, Officer Drumm was in Thompson's garage only because he followed Thompson to the garage after Thompson twice disobeyed police orders and drove away from the intersection where Officers Jones and Crescenti were conducting questioning and from where Officer Drumm specifically told Thompson to stop. Officer Drumm's conduct in following Thompson to the garage to arrest him was, therefore, reasonable. *See Brooks,* 653 F.3d at 486-87; *see also Santana*, 427 U.S. 38, 42 (1976); *People v. Wear*, 229 Ill. 2d 545, 567-68, 571 (Ill. 2008) ("Notwithstanding the warrant requirement, a suspect may not defeat an arrest that was set in motion in a public place by escaping to a private place").

Officer Drumm's conduct in seizing Thompson's car in his garage was also reasonable. Thompson focuses on the fact that his attached garage was private property and within the curtilage of his home. *See Vinson*, 776 F.3d at 929. Thompson was arrested within the open entrance of the garage and does not challenge the basis for probable cause of his arrest, nor does he allege an unlawful arrest—therefore he cannot contest the right of the officers to be in the garage because the garage was private property. Therefore, the officers' presence in Thompson's open garage is not disputed for the purposes of his arrest. As such, it is further reasonable that because Thompson's vehicle was in plain view and its incriminating nature was immediately apparent—because the officers saw Thompson drive his car from the scene of questioning—the officers had a reasonable basis for the seizure. *See United States v. Williams*, 495 F.3d 810, 815 (7th Cir. 2007) (citing *Texas v. Brown*, 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) ("Generally, incriminating objects in a lawfully positioned officer's plain view are subject to seizure"); *see also United States v. Brown*, 79 F.3d 1499, 1508 (7th Cir. 1996) (*citing Horton v. California*, 496 U.S. 128, 136-27, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990)) ("The plain view doctrine 'is often considered an exception to the general rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures. If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. A seizure of the article, however, would obviously invade the owner's possessory interest'"); *Martinez v. Lafayette Police Dept.*, No. 4:13-CV-12 WL, 2013 WL 1856804, at *3 (N.D. Ill. May 1, 2013) (*citing Brown*, 79 F.3d at 1508 (finding the plaintiff did not allege a plausible Fourth Amendment claim for unlawful seizure where the officers were entitled to seize the vehicle which was in plain view

because they had information that the vehicle was involved in a hit-and-run accident and were lawfully on the property to execute the arrest warrant).

Because the officers had a right to be in the garage, they had probable cause to seize the vehicle they knew to be used in the commission of a statutory offense subjecting the vehicle to forfeiture. *See Pace,* 898 F.2d at 1244–45. This renders the subsequent impound reasonable under the Fourth Amendment. *Id.*, at 1241-42. Viewing all facts and reasonable inferences in Thompson's favor, Thompson has still failed to raise a genuine issue of material fact that precludes the Court's determination that, based on the undisputed facts, probable cause existed for the impound of Thompson's vehicle. The Court, therefore, grants summary judgment to Defendants regarding the seizure of Thompson's car on this basis.

**2.    Impound of Thompson's Vehicle was Not in Furtherance of Public Safety or Community Caretaker Functions**

Even though Defendants are entitled to summary judgment for the impound because the undisputed facts demonstrate that Thompson's vehicle was used in the commission of an offense, the Court will nonetheless address the second bases which the parties extensively briefed. Namely, whether the impoundment was in furtherance of "public safety" or "community caretaking functions." *See Duguay*, 93 F.3d at 351 (*citing Opperman*, 428 U.S. at 368-69). "The existence of a police policy, city ordinance, or state law alone does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment." *United States v. Cartwright*, 630 F.3d 610, 614 (7th Cir. 2010) (*citing Sibron v. New York*, 392 U.S. 40, 61, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) ("The question in this Court upon review of a state-approved search or seizure is not whether the search (or seizure) was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment")).

There is no dispute that Officer Drumm impounded Thompson's vehicle pursuant to Chapter 4 of the Monee Village Code. (Stmt. of Undisputed Facts, ¶ 52.) The Monee Village Code and the Monee Police Department Vehicle Towing Policy mandate vehicles operated—with permission of the owner—by a driver with a suspended license or used to flee or elude a peace officer are subject to seizure and impoundment. (*See* 625 ILCS 5/6-303; R.172-4, Ex. L, Monee Village Code, Chapter 4, Motor Vehicle Impoundment, Section 6-4-8(K); R.172-4, Ex. M, Monee Vehicle Towing Policy.) Pertinent here, Section 6-4-8(K) of Chapter 4 provides that vehicles used in violation of the following *shall* be impounded: driving while intoxicated; unlawful drugs in motor vehicle; driving without a license or while license is suspended or revoked; and vehicle involved in an unlawful attempt to flee or elude a police officer. (*Id.*, ¶ 53; *see also* R.172-4, Ex. L.) Monee Police Department's Policy Manual also had a Vehicle Towing Policy with the purpose and scope of providing "the procedures for towing a vehicle by or at the direction of the Monee Police Department." (*See* Stmt. of Undisputed Facts, ¶ 56; R.172-4, Ex. M, Vehicle Towing Policy.) Officer Drumm indicated on the Notice of Vehicle Impoundment that the car was being impounded for fleeing or eluding and because Thompson drove with a suspended license. (*Id.*, ¶ 54.)

Defendants' reliance on the Monee Village code, while important, does not immunize the seizure of Thompson's vehicle from scrutiny under the Fourth Amendment. "The existence of a police policy, city ordinance, or state law alone does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment." *Cartwright*, 630 F.3d at 614. Defendants rely on *Duguay* to assert that in order for a seizure and impound of a vehicle to be in accordance with the Fourth Amendment, police must follow some standardized criteria. (*See* R.171, at 9 (citing *Duguay*, 93 F.3d at 351).) The inquiry for reasonableness of an

impound under the Fourth Amendment, however, is not that simple. A closer review of *Duguay* and the later *Cartwright* case is instructive.

In *Duguay*, the defendant moved to suppress drugs found in his vehicle during what the government argued was an inventory search conducted subsequent to a valid decision to impound the car. 93 F.3d at 351. The defendant (passenger) and his girlfriend (driver) drove into an apartment parking lot, parked, locked the car and activated the car alarm. *Id.* at 349. State and federal officers on a sweep recognized the defendant and his vehicle from a prior drug investigation and stopped the vehicle to question the defendant and his girlfriend. *Id.* Upon attempting to perform a frisk of the defendant, the defendant objected, striking one of the officers with his elbow. *Id.* An altercation ensued and the officers arrested the defendant for assault, and the defendant told his girlfriend to not surrender the car keys. *Id.* One of the officers indicated they were going to impound the car and he demanded the keys, to which the girlfriend refused and was subsequently arrested for obstruction of justice. *Id.* After obtaining the keys, the officers found cocaine in the back seat of the car. *Id.* The Seventh Circuit, reversing the district court, found that the warrantless search and seizure of the defendant's car failed to meet the strictures of the Fourth Amendment for "two *independent* reasons." *Id.* at 351 (emphasis added). First, the Seventh Circuit concluded that the police department lacked a written or standardized policy under which a car may be impounded or searched which failed to meet the Supreme Court's *Wells* requirement. *See Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) ("[S]tandardized criteria or established routine must regulate 'inventory searches"). Second, the Seventh Circuit concluded that the police department did not articulate a constitutionally legitimate rationale for impounding the defendant's car. *Id.* at 352. The appellate court emphasized the distinctive processes of impounds and inventory searches

and noted that "[a]n impoundment must either be supported by probable cause, or be consistent with the police role as 'caretaker' of the streets and completely unrelated to an ongoing criminal investigation." *Id*. The officers argued that they had an obligation to impound the car to protect it from theft or vandalism and to avoid municipal liability. *Id.* The Seventh Circuit was not persuaded, however, because under the Fourth Amendment reasonableness analysis, a decision to impound "unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots." *Id.* at 352-53.

The Seventh Circuit later clarified that the presence of a standardized police policy or ordinance or state law alone will not immunize a search or seizure from Fourth Amendment scrutiny. *See Cartwright*, 630 F.3d at 614. In *Cartwright*, a police officer pulled over the defendant in a grocery store parking lot after observing the car did not have an illuminated rear license plate, in violation of state law. *Id.* at 612. When the defendant responded to the officer's questioning that he did not have his driver's license, demonstrated a nervous demeanor, and refused to identify himself, the officer removed him from the car and arrested him. *Id.* Pursuant to police department policy, the officers impounded the car and conducted a search. *Id.* Another officer removed the passenger and her child from the car and proceeded to search the back seat where he found a loaded semi-automatic pistol. *Id.* The officer had the car towed, as the defendant was under arrest and the passenger did not have a driver's license. *Id.* The Seventh Circuit affirmed the district court's denial of the defendant's motion to suppress the gun and distinguished *Duguay* for two reasons. *Id.* at 616. First, the Seventh Circuit noted that unlike *Duguay*, the officers in *Cartwright* were acting pursuant to a comprehensive towing and impoundment policy that set forth the circumstances under which the police may tow a car and

required an inventory search whenever an officer took a car into custody. *Id.* at 614-15. The appellate court specified that "[t]he existence of a police policy, city ordinance, or state law alone," however, "does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment." *Id.* at 614. In addition to the towing policy, the Seventh Circuit further reasoned that unlike in *Duguay* "where the officers impounded the car despite the presence on the scene of a licensed driver readily able to move it," in *Cartwright*, the passenger "had no means of ensuring the 'speedy and efficient' removal of the passenger's car from the parking lot." *Id.* at 615.[11]

A vehicle parked inside of the owner's garage (or even on their driveway) does not typically present the public safety or community caretaker concerns necessary for reasonable warrantless seizure of a vehicle. Defendants cite no public safety or community caretaker concerns that justify the warrantless seizure of Thompson's vehicle from his garage. Instead, the case law provides for reasonable seizure (impound) of a vehicle, absent probable cause, in cases where the vehicle was left in a parking lot or parked illegally or no one else could legally take the vehicle to a safer location. *See e.g., Opperman*, 428 U.S. at 375 (finding the search of respondent's car reasonable because the officers "were indisputedly engaged in a caretaking search of a lawfully impounded automobile" where the owner had left his car illegally parked for an extended period of time and was not present to make other arrangements for the safekeeping of his belongings); *Cartwright*, 630 F.3d at 615 (finding the officers' actions in impounding a car according to department policy were reasonable where the car was parked in a parking lot between two rows of parking spaces and not in a designated spot and the arrestee and his

---

[11] The Seventh Circuit further noted that no one could have lawfully driven the vehicle from the scene, "as it did not have the functional license plate lamp required by state law." *Cartwright*, 630 F.3d at 616.

unlicensed passenger "had no means of ensuring the 'speedy and efficient' removal of her car from the parking lot"); *United States v. Cherry*, 436 F.3d 769, 774 (7th Cir. 2006) (holding that the district court did not commit clear error in finding that officers were authorized to tow the defendant's car from alongside the interstate to a safe location and followed standard procedures in conducting an inventory search of the defendant's car after they discovered he lacked proof of insurance); *United States v. Briggs*, 273 F.3d 737, 739 (7th Cir. 2001) (truck towed from alongside road because driver's license was suspended).

In the present case, the Monee police officers have not articulated a constitutionally legitimate rationale for impounding Thompson's car based on the public safety and community caretaker concerns. There is no dispute that Officer Drumm was acting pursuant to department policy in impounding Thompson's vehicle based on his arrest for fleeing/eluding and driving with a suspended license. (Stmt. of Undisputed Facts, ¶¶ 53, 54.) It is also undisputed that Officer Drumm served Thompson with a copy of the Notice of Vehicle Impoundment that noted these reasons. (*Id.*, ¶ 55.) Prior to the vehicle being towed, Officer Drumm completed an inventory search of the vehicle and prepared a Tow Report pursuant to the Monee Police Department Vehicle Towing Policy. (*Id.*, ¶ 56.) It is undisputed that the officers cited Thompson for these violations and Thompson does not contest the lawfulness of his arrest. (*Id.*, ¶ 50.)

Similar to *Cartwright*, which had a comprehensive towing and impoundment policy setting forth the circumstances under which the police may tow a car, the Monee Village policy also sets forth the circumstances for towing and impoundment of a vehicle. The mere existence of a comprehensive policy alone, however, is not sufficient to meet the constitutional requirements of the Fourth Amendment for impound of a vehicle. *See Cartwright*, 630 F.3d at

614. Rather, a decision to impound "unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots." *Duguay*, 93 F.3d. at 352-53. Because Thompson's vehicle was parked inside of his garage at the time of the seizure, the officers had no need to "provide for the speedy and efficient removal of the car from public thoroughfares or parking lots." *See id.*

Defendants argue that *Cartwright* "does not require … that the reasonableness of the seizure be justified under the Fourth Amendment wholly separated from the existence of the policy." This argument, however, is directly contradictory to the clear instruction of *Cartwright* which states: "The existence of a police policy, city ordinance, or state law alone does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment". *Cartwright*, 630 F.3d at 614. Indeed, the district court opinions upon which Defendants rely deal with vehicles located in areas that reasonably implicate the public safety and community caretaker concerns necessary for a reasonable impound (absent probable cause of criminal activity). *See United States v. Watson*, No. 10-CR-30238, 2011 WL 1884735, at *5 (S.D. Ill. May 17, 2011) (denying motion to suppress under the inevitable discovery doctrine reasoning that the police could have performed a lawful inventory search under their policy after impounding the defendant's car which they pulled over in an unsafe area of East St. Louis and the defendant was alone and driving with a suspended license); *Skube v. Williamson*, No. 12-3185, 2015 WL 890363, at *11 (C.D. Ill. Feb. 27, 2015) (impounding a vehicle pulled over by police after the driver illegally stopped over two stop signs and failed to stay in his lane). Defendants argue that the impoundment in *Cartwright* was upheld "even though the alternative of leaving the vehicle in the grocery store lot in which it was found was available to the

officers." The cited footnote in *Cartwright*, however, is inapposite as it indicates that the officers had a reasonable basis for the impound of a vehicle "stopped between two rows of parking spaces—as this may have created a hazard to others using the lot or rendered the police vulnerable to claims had the car been stolen, vandalized, or damaged." *See Cartwright*, 630 F.3d at 615, n.1.[12] Accordingly, viewing the facts and all reasonable inferences in Thompson's favor, the Village has failed to establish that Thompson's vehicle was lawfully impounded based on concerns of public safety and community caretaker roles of officers. As noted above, however, Defendants have established that the impound of Thompson's vehicle was supported by probable cause of criminal activity. *See Duguay*, 93 F.3d at 351 (*citing Opperman*, 428 U.S. at 368-69) ("The decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots").

### 3. Qualified Immunity Protects the Officers' Impound of Thompson's Vehicle

The Court has granted summary judgment for the seizure of Thompson's vehicle because the officers had probable cause to believe that the vehicle was used to conduct criminal activity. Even if they did not have probable cause, however, the officers would nonetheless be entitled to qualified immunity regarding impoundment based on concerns of public safety and community caretaker roles because Plaintiff failed to meet his burden to demonstrate that this conduct violated clearly established constitutional rights at the time of the offense. The doctrine of

---

[12] Defendants reliance on *United States v. Evans*, 781 F.3d 433, 436 (8th Cir. 2015), is equally unpersuasive. The police in *Evans* seized the defendant's car from a common area parking lot of an apartment complex where the defendant did not live after the apartment manager requested the vehicle be removed and there was not another responsible party on the scene to take custody of the vehicle. 781 F.3d at 435.

qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Weinmann v. McClone*, ___ F.3d ___, 2015 WL 3396858, at *2 (7th Cir. May 27, 2015) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The doctrine "strikes a balance between 'protecting a government official's ability to function without the threat of distraction and liability' and 'affording members of the public the ability to vindicate constitutional violations by government officials who abuse their offices.'" *Weinmann*, 2015 WL 3396858, at *2 (*citing Gibbs v. Lomas*, 755 F.3d 529, 535 (7th Cir. 2014)). "Qualified immunity is supposed to protect officers in the close case, and it therefore must apply to the officer's snap judgment in a legally hazy area." *White v. Stanley,* 745 F.3d 237, 241 (7th Cir. 2014). In order to evaluate Defendants' qualified immunity defense, the Court must answer two questions: (1) whether the facts, taken in the light most favorable to Thompson, depict a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Weinmann*, 2015 WL 3396858, at *2 (*citing Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013); *see also Humphries v. Milwaukee Cnty.,* 702 F.3d 1003, 1006 (7th Cir. 2012); *Findlay v. Lendermon,* 722 F.3d 895, 899 (7th Cir. 2013). A court may address these prongs in any order. *McComas v. Brickley,* 673 F.3d 722, 725 (7th Cir. 2012).

For a constitutional right to be clearly established:

> [T]he "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

*McAllister v. Price,* 615 F.3d 877, 884–85 (7th Cir. 2010) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *see also Purtell v. Mason,* 527 F.3d 615, 621 (7th Cir. 2008) (*quoting Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

A plaintiff can "demonstrate that the right was clearly established by presenting a closely analogous case that establishes that the [d]efendant's conduct was unconstitutional or by presenting evidence that the [d]efendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court." *Estate of Escobedo v. Bender,* 600 F.3d 770, 779–80 (7th Cir. 2010). The "salient question" for finding a closely analogous case is "whether the state of the law at the relevant time gave the [d]efendants fair warning that their treatment of [the plaintiff] was unconstitutional." *Id.* at 781. If a plaintiff does not identify a case directly on point, the plaintiff may still meet this burden if "'existing precedent [has] placed the statutory or constitutional question beyond debate.'" *Hernandez ex rel. Hernandez v. Foster,* 657 F.3d 463, 471 (7th Cir. 2011) (*quoting Ashcroft v. al-Kidd*, ––– U.S. ––––, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011)).

Thompson has not met his burden to defeat Defendants' qualified immunity defense. Namely, Thompson has not met the second prong of the qualified immunity analysis because he has failed to show that the right at issue was clearly established at the time of the alleged violation. Thompson exclusively relies on *Vinson* and argues that because the vehicle was left in Thompson's attached garage—the curtilage—it is comfortably within the scope of the Fourth Amendment protections of the home and makes the warrantless search and seizure *per se*

unreasonable. (R.189, at 10-12.) Thompson's reliance on *Vinson*—a 2015 Seventh Circuit case—is misplaced. First, any rights established by *Vinson* are not relevant in a qualified immunity analysis for an incident that occurred in June 2010 because to an officer at the time of the alleged violation could not have known them. *See Weinmann*, 2015 WL 3396858, at \*2 (explaining the second prong of qualified immunity doctrine as whether that constitutional right was clearly established at the time of the alleged violation); *see also Findlay*, 722 F.3d at 900 (finding qualified immunity defense undefeated where the altercation predated the case law relied upon by the plaintiff). Second, as discussed above, recognition of an attached garage as curtilage is not dispositive of the impound concerns of public safety and community caretaker functions and it does not address the specificity required in local policies and state laws for impound and their relationship with constitutional reasonableness. Furthermore, Thompson was arrested in his garage after he twice disobeyed police orders to stop and drove into his garage, parked and exited his car and turned to approach Officer Drumm as he walked up the driveway toward the garage. Officer Drumm's presence in the garage after following Thompson there to arrest him was, as discussed above, reasonable. *See Brooks,* 653 F.3d at 486-87; *cf. Norris,* 640 F.3d at 303.

The Seventh Circuit case law surrounding the relationship between department policies and reasonable impound of vehicles under the Fourth Amendment evolved from the 1996 case of *Duguay* to the 2010 case of *Cartwright* to clarify that the existence of a standardized, comprehensive policy, alone, is not sufficient basis for constitutional rationale of reasonable impound. *See Cartwright*, 630 F.3d at 614. The insight provided to the officers by *Cartwright*— a December 2010 Seventh Circuit case—like *Vinson*, was not available until after the incident at issue occurred. Without the Seventh Circuit's direction in *Cartwright* as to the relationship

between Monee's policies and constitutional reasonableness of an impoundment under the Fourth Amendment, the Court cannot find—based on the undisputed facts here—that the officers' actions were "so patently violative of the constitutional right that reasonable officials would know without guidance from a court." *See Estate of Escobedo,* 600 F.3d at 779–80. Until clarification in *Cartwright*, the language in *Duguay* suggested that a comprehensive policy alone may justify an impound. It is undisputed that the officers cited Thompson for violations explicitly specified in the Monee policy as a basis for the impound and subsequent inventory search of a vehicle. Thompson does not challenge his arrest and does not challenge the constitutionality of the Monee policies. The officers here were presented with a situation that was explicitly outlined for them and they acted in accordance with those policies. Accordingly, Thompson—upon whom the burden squarely rests—fails to defeat Defendants' qualified immunity defense because he has not identified sufficiently analogous case law clearly establishing the constitutional right he accuses the officers of violating. *See Abbott v. Sangamon Cnty.*, 705 F.3d 706, 731 (7th Cir. 2013) (In order to establish defeat a qualified immunity defense, the plaintiff is required to produce a case "clearly establish[ing] [the right] in a particularized sense, rather than in an abstract or general sense").

### B.     Search of Thompson's Vehicle

The Court has granted summary judgment for the seizure of Thompson's vehicle because the officers had probable cause to believe that the vehicle was used to conduct criminal activity and because the officers were protected by qualified immunity as to the seizure of Thompson's car from his garage. Thompson also asserted that Defendants violated his constitutional rights through the corresponding search of his vehicle. Although the Court has granted summary judgment for the seizure of Thompson's vehicle, the Court treats the corresponding search of

Thompson's vehicle as distinct from the decision to impound.  *See Duguay*, 93 F.3d at 351.  A decision to impound and a decision to conduct a search "are warranted in different (though frequently overlapping) circumstances."  *Id.* (citation omitted).  The "strictures of the Fourth Amendment" must be met by both the decision to take the car into custody and the concomitant inventory search.  *Id.*

"Inventory searches constitute a well-recognized exception to the warrant requirement and are reasonable under the Fourth Amendment."  *Cartwright*, 630 F.3d at 613 (*citing Opperman*, 428 U.S. at 376).  It is routine for local police departments to inventory and secure the contents of impounded vehicles as "[d]oing so protects the police from potential danger, protects the owner's property while it remains in police custody, and protects the police against claims of lost, stolen or damaged property."  *Cartwright*, 630 F.3d at 613-14 (citing *Opperman*, 428 U.S. at 369).  An inventory search is lawful if "(1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures."  *Cartwright*, 630 F.3d at 614 (*citing United States v. Jackson*, 189 F.3d 502, 508-09 (7th Cir. 1999)).

Illinois courts have repeatedly found that impoundments and subsequent inventory searches are valid if the basis of the impoundment was reasonable.  *See Duguay*, 93 F.3d at 353 (collecting Illinois cases).  This is true despite the fact that the rationales of impound "are distinct from the permissible reasons for conducting a routine inventory of the contents of an impounded vehicle, which are 'to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'"  *Duguay*, 93 F.3d at 351 (*citing Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738,

741, 93 L.Ed.2d 739 (1987)).  Once the reasonableness of the impound is established, any subsequent inventory search is a similarly valid basis for its reasonableness.

It is undisputed that the search of Thompson's vehicle was an inventory search subsequent to the decision to tow the vehicle.  (*See* Stmt. of Undisputed Facts, ¶ 56 (Officer Drumm completed an inventory search of the vehicle and prepared a Tow Report pursuant to the Monee Police Department Vehicle Towing Policy).)  The Vehicle Towing Policy provided that all property in a stored or impounded vehicle must be inventoried and listed on a tow report.  It further directed officers to be as thorough and accurate as practical in preparing the inventory, which includes an inventory of "the trunk and any compartments or containers, even if closed and/or locked."  (*Id.*, ¶ 57.)  The Vehicle Towing Policy expressly stated that these procedures are for the purpose of protecting an owner's property while in police custody, to provide for the safety of others, and to protect the Department against fraudulent claims of lost, stolen or damaged property.  (*Id.*, ¶ 58.)  Because the Court has found that the officers had probable cause to impound Thompson's vehicle based on its use in the commission of the offense of fleeing/eluding, the subsequent inventory search of his vehicle was also reasonable under the Fourth Amendment.  The Court, therefore, grants summary judgment to Defendants regarding the search of Thompson's car.

**III.**     **Count VIII - Thompson's *Monell* Claim**

Thompson sued the Village of Monee under *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978), alleging that the individual officers' actions, as alleged in Counts I through VII, were committed pursuant to the policies and decisions of Chief Cipkar and former

Chief Caruso.[13]  (*See* R.120, Count VIII, ¶¶ 97-102.)  Thompson's basis for these arguments

revolves around complaints made to the Monee Police Department by Thompson's neighbors

regarding the noise level at Thompson's residence on various occasions stretching from July

2010 to August 2014.  Specifically, on July 10, 2010, Monee Police Officers went to

Thompson's residence on four occasions in a nine-hour stretch of time for complaints of loud

music.  (Stmt. of Undisputed Facts, ¶ 67.)  On July 25, 2010, Monee Police Officers went to

Thompson's residence in response to a complaint of loud music made by a neighbor, Teresa

Catey.  (*Id.*, ¶ 69.)  According to the police report, the officers spoke with Thompson who agreed

to lower the volume of the music.  (*Id.*, ¶ 70.)  On July 9, 2011, Monee Police Officers went to

Thompson's property in response to complaints of loud music made by three neighbors.  (*Id.*,

¶ 71.)  An attorney friend of Thompson's who was at an event spoke with officers and

complained about the loud music coming from a different party taking place in the

neighborhood.  (*Id.*, ¶ 73.)  According to the police report, when the officers left Thompson's

property, they spoke with the other neighbors, who agreed to turn down their music.  (*Id.*, ¶ 74.)

On July 17, 2011, Officer Crescenti arrested Thompson after a neighbor signed a complaint for

breach of peace due to the volume and vulgarity of the music playing from Thompson's

residence.  (*Id.*, ¶ 75.)  Thompson was convicted of disorderly conduct and fined.  (*Id.*, ¶ 76.)

The appellate court affirmed his conviction.  (*Id.*)  On July 25, 2014, Monee Police Officers went

to Thompson's residence in response to a neighbor's complaint about loud music at a party.  Due

to the hundreds of attendees, officers from six neighboring police departments assisted in

breaking up the party.  (*Id.*, ¶ 77.)  On August 10, 2014, Monee Police Officers again went to the

---

[13] Thompson's allegations of individual liability against former Chief Caruso were dismissed with
prejudice on January 12, 2015 (*see* R.166) and no allegations of individual liability were made against
Chief Cipkar.

area of Thompson's property in response to neighbors' complaints of people blocking the roadway and walking through yards. (*Id.*, ¶ 77.) When they arrived, Thompson informed the officers that he intended to shut down the party. (*Id.*, ¶ 78.) Officers from five neighboring police departments assisted Monee police officers with traffic control and pedestrian safety involving hundreds of party-goers as a result of the August 10, 2014 complaints. (*Id.*, ¶ 79.) During the time that Thompson has lived in Monee, officers have investigated noise complaints against both white and black residents. (*Id.*, ¶ 80.)

During the relevant time period, the Monee Police Department maintained anti-discrimination policies in its code of ethics, code of conduct and racial profiling policy. (Stmt. of Undisputed Facts, ¶ 60.) The Monee Police Department had in place a procedure for receiving and investigating citizen complaints, including complaints about racial discrimination. (*Id.*, ¶ 61.) According to Chief Cipkar, Monee Police Officers are trained to investigate complaints of loud or excessive noise by responding to the scene and, if possible, speaking with the individual associated with the property from where the noise alleged came. (*Id.*, ¶ 65.) Department policy requires that officers investigate all complaints in the same manner, without regard to the race of the person making the complaint or the race of the person against whom the complaint is made. (*Id.*, ¶ 66.)

Thompson's specific *Monell* claims surround his allegations against that Chief Cipkar and former Chief Caruso were the final policymakers of the Village; had actual knowledge of the complaints made by Thompson's neighbor, Theresa Catey; knew or should have known of the racial intent of Catey's complaints; and gave specific instructions to enforce the complaints with deliberate indifference to the likelihood of constitutional violations. (*See* R.120, Count VIII, ¶¶ 97-102.) Alternatively, Thompson asserts that the officers' actions were committed pursuant

to one or more *de facto* policies, practices and/or customs of Monee, the Monee Police Department, and Chief Cipkar and former Chief Caruso.  (*Id.*)  The policies, practices, and customs identified by Thompson's complaint are all directed at racial discrimination, including alleged (1) failure to recognize the changing statistics of the racial population in Monee; (2) failure to make reasonable investigation into Catey's complaints; and (3) failure to make reasonable investigation into Thompson's complaints to Chief Cipkar and former Chief Caruso about his treatment by Defendant officers.  (*Id.*)

A municipality or local government cannot be liable under 42 U.S.C. § 1983 unless the underlying constitutional deprivation is caused by a municipal claim or practice.  *See Monell*, 436 U.S. at 658; *see also Jenkins v. Bartlett,* 487 F.3d 482, 492 (7th Cir. 2007) ("[m]isbehaving employees are responsible for their own conduct, "units of local government are responsible only for their policies rather than misconduct by their workers"); *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003) ("municipalities cannot be held liable for § 1983 claims under s theory of respondeat superior"); *Gossmeyer v .McDonald*, 128 F.3d 481, 494 (7th Cir. 1997) ("[m]unicipalities and other local government units cannot be liable under § 1983 on a respondeat superior theory, but can be liable if action pursuant to an official policy or custom of the municipality or government unit causes a constitutional tort.")  To prevail on a *Monell* municipal policy claim and establish liability, Thompson "must produce evidence of (1) an express policy, that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority."  *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007).

Defendants argue that Thompson has failed to establish a violation of any constitutional rights because there are no triable issues of fact that Thompson was harassed by police or that Thompson's neighbor, Theresa Catey's, complaints were racially motivated. In addition, Defendants argue that Thompson has not shown that Chief Cipkar and former Chief Caruso had final policymaking authority in any relevant area to support his claim and has failed to establish any injury caused by alleged *de facto* policies, practices or customs as he points only to statistics of a changing Monee racial population, Catey's complaints and his own interactions with Monee police officers. Lastly, Defendants argue that Thompson has presented no evidence in support of his claim that Monee was required to provide reasonable training, supervision and control of its officers in regard to failure to recognize the change in the racial population.

Thompson's response fails to address any of the substantive arguments presented by Defendants. Rather, Thompson presents an entirely new *Monell* theory challenging the Monee Police Use of Force Policy and the Vehicle Impoundment statutes. Specifically, Thompson argues that enforcement of these policies caused his unconstitutional deprivation. The problem with Thompson's argument, however, is that it essentially presents a new *Monell* claim. In fact, these same arguments provided Thompson's basis for his Motion to Amend filed concurrent with his Opposition to Defendants Motion for Summary Judgment. The Court denied Thompson's Motion to Amend on March 10, 2015 for reasons of timeliness and prejudice to Defendants. *See* R.196, R.199; *see also Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997) (finding the district court did not abuse its discretion in denying the plaintiff's leave to amend her complaint to include a second theory of liability raised for the first time in her brief in opposition to summary judgment after fact discovery closed and defendants' summary judgment motion was pending). Similarly, the Court will not consider those same arguments at the summary

judgment stage because Thompson cannot amend his complaint through arguments in his brief in opposition to summary judgment. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002); *see also Auston v. Schubnell,* 116 F.3d 251, 255 (7th Cir. 1997) ("[Plaintiff] did not include the promissory estoppel claim in his complaint or his amended complaint, adding it only at the summary judgment stage. This is too late in the day to be adding new claims").

Accordingly, the Court grants Defendants' motion for summary judgment regarding Thompson's *Monell* claim in Count VIII.

**IV.     Thompson's State Law Indemnification Claim is Dismissed**

Having granted summary judgment for Defendants as to all pending federal claims in this case, Thompson's indemnification claim which seeks to hold the Village liable for the unlawful acts of the individual defendants, does not survive as there is nothing for the Village to indemnify. Consequently, Count IX is dismissed.

**CONCLUSION**

For the reasons stated above, the Court grants Defendants' motion for summary judgment relevant to Counts III, IV and VIII, and dismisses Count IX.


**DATED:  June 17, 2015**                                   ENTERED

                                                            _____
                                                            AMY J. ST. EVE
                                                            United States District Court Judge